# Sellers, *et al. v.* Dickert, *et al.*

## *Assumpsit.*

(Decided December 4, 1913.    64 South. 40.)

1. *Evidence; Parol to Vary Writing.*—The doctrine that forbids the introduction of parol evidence to alter, vary or contradict a writing necessarily rests upon the existence of a valid written instrument expressing the obligations assumed by or imposed upon the parties.

2. *Same.*—The implication is that an executed writing contains all the stipulations, engagements and promises the parties intended to make or to assume, and that all previous negotiations, conversations and agreements were merged in the terms of the instrument.

3. *Same; Identifying Contract.*—In an action on a due bill, payable as provided by the terms of the original contract, parol evidence was admissible to identify the contract meant, although there was a prior written contract between the parties, as such evidence did not have the effect to alter, vary or contradict such prior contract.

4. *Same; Establishing Terms of Contract.*—Where the due bill sued on is made payable as provided by the original contract, parol evidence was admissible as to the terms of the original contract, although there was a prior written contract, which the witness testified contained only a portion of the original contract, as it could not be said, as a matter of law, that the original contract meant such written contract.

5. *Same; Interpretation.*—It was proper to ask the witnesses what the terms of the original contract were in determining what was the original contract referred to in the due bill sued on, without thereby offending the rule forbidding the interpretation of written instruments other than by the court itself.

6. *Same.*—It is not permissible to allow a witness to be asked to interpret the reference in a due bill payable as provided by the terms of the original contract, as it is the function of the court to interpret a writing in evidence, and is never the function of a witness.

7. *Same; Opinion; Conclusion.*—Where the action was on a due bill payable as provided in the original contract, it was error to permit testimony that the due bill was given for the balance of the purchase price of certain property, because whether it was so given depended on the terms of the original contract, and while the witness could testify what the terms were he could not state his conclusion upon a question which was for the jury to decide.

8. *Contracts; Construction.*—Where the action was on a due bill payable as provided by the original contract, the identity of the original contract was a question for the jury notwithstanding there was a prior written contract between the parties which was claimed to be the contract made.

APPEAL from Calhoun Circuit Court.

Heard before Hon. HUGH D. MERRILL.

Assumpsit by Oma Dickert and another against E. M. Sellers and another. From a judgment for plaintiffs, defendants appeal. Reversed and remanded.

Most of the facts appear from the opinion. The several assignments of error grouped as A, under subdivision 3, refer to the following:

(2) The court erred in overruling objection of appellants to the following question asked by appellees of the witness L. M. Winn: "Now, state what was the trade that you made for Misses Dickert and Landt with the Drs. Sellers."

(3) Overruling objection to question to same witness: "Well, state whether or not anything was said, Doctor, in this transaction, whether anything was said in this trade with Sellers, or whether it was agreed to by you and Dr. Moore, for the plaintiffs, that plaintiffs would wait for the $5,000 to be raised by the trustees before they could receive their $2,000, there or about the time of making this contract."

(4) Answer of witness: "They were to receive $2,000, to be paid by defendant, $1,000 down, and $1,000 in 60 days. It was first agreed that they would pay whatever amount of indebtedness there was on the furniture as soon as it was moved."

(5) Overruling objection to question to same witness: "Well, now, what was this you say then? Go on and state."

(9) The court erred in overruling appellant's motion to exclude all the evidence of alleged agreements between defendants and plaintiffs prior to March 18, 1912, as tetified to by the witness Winn, to the effect that defendants agreed to buy the property of the Anniston Hospital, or of the plaintiffs, for $2,000, to be paid by defendants.

(10) Overruling objection to question asked the witness Moore: "Go ahead and state the conversation you had."

· · (11) In declining to exclude the answer to said question: "The conversation didn't amount to anything that night, except that Dr. Sellers said that I could have some influence with Dr. Winn, and that the two of us could manage the other hospital, that he and his brother could not trade with the girls, unless they could do it through us, and that was about all that was done that night. The next day was Sunday, and I was over at the West End Drug Store on Fifteenth street. E. M. Sellers stopped over to see me, and made the proposition that, if I could make the trade with the young ladies, he would give them $1,500, and give Winn and myself $250 apiece for making the trade, and I told him I would see Winn. I saw Winn the next day, and we agreed to call Dr. Sellers and let it be $2,000 for the equipment of the Anniston Hospital to be paid to the young ladies, and not to pay us anything, and we would do just as much towards the consummation of the trade as if he had divided with us."

(12) Overruling objection to question to same witness: "What trade did you finally consummate for them with reference to how much they should receive from the Sellers Bros., for their equipment, good will, established business, etc.?"

(13) Refusal to exclude answer to same: "The final consummation was that the girls were to get $2,000; $1,000 when they moved, and another $1,000 in 60 days."

(18) Overruling objection to question to same witness: "State what Dr. Sellers said on that occasion about the payment of the $2,000."

(19) Failure to exclude answer: "He said he would pay $1,000 when they were moved, and another $1,000

in 60 days, or when he got the first payment of $5,000 from the trade with the city; and I asked him the question, 'Suppose you don't get the $5,000?' and he said, 'Yes; but I know we will, and we will guarantee that we do, and that this will be paid."

(20) Question to same witness: "Was there anything said, Doctor, about plaintiffs being paid out of the $5,000, and having to be paid out of the $5,000 before they received anything?"

(21) Failure to exclude the answer: "If there was anything, I didn't hear it."

(22) Motion to exclude all of the testimony of the witness Moore as to an alleged prior verbal agreement or contract, prior to the execution of the contract in evidence, dated March 18, 1912.

(32) Refusal to give charge 6: "The only contract you can consider in this case is that in writing dated March 18, 1912, between plaintiffs and defendants, and you cannot consider any verbal agreement alleged to be made prior thereto, or contemporaneous therewith, between the parties or their agents."

(33) Refusal to give charge 7: "If plaintiffs and defendants agreed on a trade, and subsequently reduced their agreement to writing on March 18, 1912, then you can consider only the said written agreement in determining the contract between the parties."

(35) Charge 9: "You should not consider any alleged verbal agreement in the case prior to the written agreement dated March 18, 1912, between plaintiffs, and defendants, nor any alleged verbal agreement made at the time said written agreement was made."

The question set out in assignment of error 26 is as follows: To the witness Moore: "I will ask you whether or not you mean to say, by the words 'due by the terms of the original contract,' due by the terms of

14—185

the verbal contract, what was the original contract;" and the answer: "$1,000 down, and $1,000 in 60 days."

RUTHERFORD LAPSLEY, and JAMES F. MATTHEWS, for appellant. Principles of law which the court violated in the admission of evidence have been clearly stated by able text writers and interpreted by the courts and admit of no dispute.—2 Jones on Evid. pp. 543-5; Stevens on Evid. Art. 90; *Cole v. Spann,* 13 Ala. 537; *Dean v. Mason,* 10 Am. Dec. 163; *Dewitt v. Berry,* 134 U. S. 306. Interpretations of writings or written contracts are matters for the court and not for a layman.—Jones on Evid. p. 200.

WILLETT & WILLETT, for appellee. Where a contract is not required to be in writing, but when reduced to writing it refers to a prior verbal contract as a part of its stipulation and obligation, such prior verbal contract can be shown by parol. And that is this case.— *Carroway v. Wallace,* 2 Ala. 542; *Self v. Harrington,* 11 Ala. 488; *Brown v. Isbell,* 11 Ala. 1009; *Adams v. Davis,* 16 Ala. 748; *Sanders v. Stokes,* 30 Ala. 432; *Murphey v. Farley,* 124 Ala. 279. When the whole of a contract had not been reduced to writing, so much of it as is separate and distinct may be shown by parol.—*Huckabee v. Shepherd,* 75 Ala. 342; *Murphey v. Farley, supra; Coleman v. Pike County,* 83 Ala. 326. The case of *Murchie v. Cook,* 1 Ala. 141, is very similar to the case at bar, and its doctrine is re-affirmed in the csae of *Thompson v. Rawls,* 33 Ala. 29.

McCLELLAN, J.—Prior to March 18, 1912, Misses Dickert and Landt (appellees) owned and operated the Anniston Hospital, and Drs. E. M. and W. D. Sellers (appellants) owned and operated the Sellers Hospital. With the purpose of establishing out of these two prop-

erties, and equipments, and institutions a public hospital in Anniston, Misses Dickert and Landt constituted Drs. Winn and Moore their agents to negotiate with the Drs. Sellers, and also bind them in the premises.  On March 18, 1912, the Drs. Sellers and Misses Dickert and Landt (through the hand of one of their agents) signed the instrument of which the following is the substance: "Know all men by these presents that this contract is hereby made by and between M. O. Dickert and O. V. Landt, doing business as the Anniston Hospital Company, party of the first part, and E. M. Sellers and W. D. Sellers, party of the second part, and it is mutually agreed and understood as follows:  That, in consideration of the mutual agreement of the parties hereto, the parties of the first part contract and agree to sell and convey to the said parties of the second part the equipment, and outfit, and all property connected therewith, not including the real estate in which the same is located, of the said Anniston Hospital Company in consideration of the sum of one ($1.00) dollar to be paid by the said parties of the second part to the parties of the first part; and the parties of the second part contract and agree, upon receipt of the said conveyance of the equipment of the Anniston Hospital Company, to sell and convey by good and sufficient deeds, with covenants of warranty, the property known as the Sellers Hospital, and all equipment connected therewith, and also the property which shall have been conveyed to the parties of the second part by said Dickert and Landt, and which is above referred to, to certain named trustees to be agreed upon for the benefit of the public, at and for the consideration to be paid to the parties of the second part of the sum of twenty-five thousand ($25,000.00) dollars, said payment to be made as follows:  The sum of five thousand ($5,000.00) dollars in sixty days, and

the balance of said purchase money in five annual installments of four thousand ($4,000.00) dollars each, with interest on each note payable annually at eight per cent. per annum."

On March 30, 1912, the Drs. Sellers executed the instrument, called a duebill in the record, in words and figures as follows: "Due Drs. Moore and L. M. Winn $1,000 in 60 days, provided by the terms of the original contract." This is the foundation of the present suit; common counts and counts in special assumpsit being employed in the statement of the cause of action. While mere mention is made in brief for appellant that the court erred, as assigned, in overruling the demurrer to count 2 as amended, no insistence upon this assignment appears in the brief for appellant. There is no assignment of error insisted upon that is predicated of rulings on the pleadings.

The major question presented for review is the propriety of the trial court's action in allowing the plaintiff to adduce evidence of obligations assumed or promises made outside of the instrument of March 18, 1912, quoted above. The real issue between parties may be made to more clearly appear by stating, summarily, the respective concrete contentions: For the plaintiffs, that defendants engaged to pay plaintiffs, *in any event,* $2,-000 for their unqualified contribution, in property, to the unit made by the aggregation of both the hospital properties, which, it was the expectation and purpose, would, in effect, be sold to the public, represented by trustees, and paid for, *to the* defendants as the temporary repositories of the title, by popular subscription, and the other $1,000 was represented by the duebill, made payable to the mentioned agents of the plaintiffs, who were without pecuniary interest therein; *and,* for the defendants, that there was no assumption by them

of an *absolute* obligation to pay plaintiffs $2,000, but only to pay them that sum if the sum to be raised in a definite time by popular subscription was paid to the defendants—a condition that was not met— the scheme being to sell the combined property to trustees for the public for $25,000, $2,000 of which should go to the plaintiffs for their property contribution, and the rest to defendants, and that the duebill was but a token of the balance ($1,000 having already been paid by defendants), to pay which the assurance was wholly contingent upon the event stated. It is thus seen that the paramount substantial issue was whether the defendants engaged unqualifiedly to pay $2,000 to plaintiffs for their hospital property. If the defendants' theory of the matter was sustained, of course the plaintiffs could not recover; but, if that of the plaintiffs prevailed, the liability of defendants was established. In the process of supporting their theory the court allow the plaintiffs, over the defendants' objections, to introduce parol evidence dehors the writing of March 18, 1912. This testimony was to the effect that a contract consistent with the plaintiffs' theory, stated before, was made, and that the duebill was an accordant element thereof —a contract not fully set forth in the writing of March 18, 1912. The basis of the objections made for defendants was the familiar doctrine which forbids the adduction of parol evidence to vary, alter, or contradict a written contract; and it is earnestly insisted for appellants that the matters of evidence admitted for plaintiffs do not fall within any of the recognized "exceptions" to the general doctrine mentioned. Counsel say, in substance in this connection, that the application of the law, and not the law, is the real subject of their controversy.

The general doctrine invoked for appellants necessarily rests upon the existence of a valid *written* in-

strument expressing the obligations assumed by or imposed upon the parties. The implication, at least, is that the executed writing contains all stipulations, engagements, and promises the parties intend to make or to assume, and that all previous negotiations, conversations, and parol agreements are merged in the terms of the instrument.

The basis for this action—the bill of sale quoted before—was executed 12 days after March 18, 1912, and at least that number of days after the parol agreements to which the witnesses were allowed to testify. In effect the first clause of the duebill said: "I owe Doctors Moore and Winn one thousand dollars, to be paid in sixty days from March 30, 1912." To this there is added, "provided by the terms of the original contract." Manifestly, the express reference there made to an "original contract" required parol evidence to identify the subject of the reference. The duebill did not describe the "original contract," either by date or other expressly identifying method. If it had definitely referred to the instrument of March 18, 1912, then there would be presented the unalloyed question to which counsel have devoted an able and elaborate discussion. The paper not having done so, it is clear that parol evidence was properly receivable to identify the "original contract." But evidence to *identify* a contract referred to in another paper and evidence to alter, vary, or contradict, if so, a written contract referred to in another paper, which has been *identified,* are, of course, very different matters—matters not to be confounded when due regard for established rules of evidence is required.

Under this duebill, a vitally important inquiry of fact was, What were the "terms of the original contract"? There was no possible way in which to estab-

lish the fact other than by evidence aliunde the due-
bill. The instrument of March 18, 1912, itself did not
establish the fact, though it was undoubtedly evidence
tending so to do *when* parol evidence was presented to
evidentially refer the terms of the duebill to that in-
strument. The defendants, in effect, affirm that the ref-
erence in the duebill was to the instrument of March
18, 1912, and to nothing else; but the plaintiffs con-
tested that affirmation, and asserted through their tes-
timony that that instrument was not alone the "orig-
inal contract"—that the "original contract" had an-
other feature which supported the liability the duebill
evidenced. Hence, before the doctrine appellants would
invoke could have operation and effect, it would be nec-
essary to affirm, as a matter of law, that the written in-
strument *was* the "original contract" referred to in the
duebill. Obviously, this could not be done by the trial
court without deciding an issue which was necessarily
a question for the jury.

In determining what was the "original contract,"
those advantaged to know the facts were the sources of
information in the premises, and it was competent to
ask them in the words of the duebill, or in other equiv-
alent phrases, what were "the terms of the original con-
tract," and thereby offend no rule forbidding the in-
terpretation or construction of *written* instruments by
other than the court itself. Such questions evoke
knowledge of a fact or a combination of facts compre-
hended in the term "contract." The several assign-
ments of error grouped as A under subdivision 3 of
appellants' brief are without merit.

There was manifest error in allowing, over defend-
ants' apt objection, the question, copied in assignment
23, propounded to the witness Dr. Moore whereby the
witness was asked to *interpret* the reference *in* the due-

bill. It is ever the function of the court, and never the privilege of a witness, to construe or interpret a writing in evidence. The motion to exclude the answer to this question was also erroneously overruled. The question set out in assignment 26 was subject to like fault, and it was error to allow it over defendants' objection.

There was error, also, in permitting the witness Winn to testify that the duebill was given for the balance of the purchase money. Whether it was given therefor or not depended upon what "the terms of the original contract" were. It was competent for the witness to testify what those terms were—what the original contract was—but for the jury to determine the issue what the "original contract" was. To allow the witness to testify to the effect indicated was to permit him to affirm that which, under the evidence, only the jury could decide.

For the errors indicated, the judgment is reversed, and the cause is remanded.

Reversed and remanded.

MAYFIELD, SAYRE, and SOMERVILLE, JJ., concur.