694 So.2d 1316 (1997)
FIRST COMMERCIAL BANK
v.
Sheryl SPIVEY.
Curtis SPIVEY III
v.
FIRST COMMERCIAL BANK.
1951862, 1951872.
Supreme Court of Alabama.
May 9, 1997.
*1318 Roderick K. Nelson, Robert S. Lamar, Jr., and Lynn B. Randall of Lamar, Nelson & Miller, P.C., Birmingham, for Appellant/Cross Appellee First Commercial Bank.
J. Gusty Yearout, William R. Myers, and John G. Watts of Yearout, Myers & Traylor, P.C., Birmingham; and Perryn G. Carroll of Carroll & Carroll, P.C., Birmingham, for Appellee Sheryl Spivey and Appellant Curtis Spivey III.
HOUSTON, Justice.
The defendant, First Commercial Bank, appeals from a judgment entered on a $1,000,000 jury verdict ($500,000 in compensatory damages and $500,000 in punitive damages) for one of the plaintiffs, Sheryl H. Spivey. Sheryl Spivey's husband, Curtis T. Spivey III, also a plaintiff, cross appeals from the denial of his motion for a new trial. The Spiveys sought damages based on allegations of breach of contract and fraud. The jury found for Sheryl Spivey, awarding $1,000,000, but found against Curtis Spivey. The trial court entered a judgment on the verdict. We affirm, both as to the appeal and as to the cross appeal.
This is the second time these parties have been before this Court. See Spivey v. First Commercial Bank, 681 So.2d 120 (Ala.1995) (Spivey I), for a more complete understanding of the history of this litigation. In that opinion, we affirmed the judgment for First Commercial in part; however, we reversed that portion of the judgment based on a jury verdict for First Commercial, and we remanded the case for a new trial on the Spiveys' claims. Some of the facts and allegations pertinent to this appeal were summarized in that opinion as follows:
"This appeal arises from two cases consolidated for trial. On October 2, 1991, First Commercial Bank filed a complaint against the Spiveys, seeking a judgment on a promissory note and a judicial foreclosure on mortgages executed by the Spiveys to secure the note. On October 4, 1991, the Spiveys filed a complaint against First Commercial, in which they alleged breach of contract, breach of fiduciary duty, and fraud. They alleged that First Commercial had fraudulently induced them to enter into a loan agreement on October 31, 1990, and to give a mortgage on their property, by falsely representing to the Spiveys that they would be able to use the entire proceeds of the loan to pay for construction of their residencethey alleged that in fact a substantial portion of the loan proceeds were actually used by *1319 First Commercial to pay off unsecured business-related loans of Curtis Spivey and Curt's Cars, Inc.
"The transactions that led to this appeal began in February 1990, when Curtis T. Spivey III, as president of Curt's Cars, Inc., executed a promissory note to First Commercial Bank, specifically for business purposes. From February 1990 through June 1990, Curt's Cars, Inc., through Spivey as its president, entered into other business loan agreements with First Commercial Bank. None of the documents relating to those loans refers to personal purposes or to residential construction purposes. The Bank charged an interest rate on these business loans equal to the prime rate plus one percent.
"On August 13, 1990, the Spiveys executed a promissory note to First Commercial Bank in the amount of $150,000 at an interest rate equal to the prime rate plus two percent. The note stated on its face that it was for construction of a personal residence located at Route 1, Box 533, Pinson, Alabama. In connection with the promissory note, the Spiveys gave First Commercial a first mortgage on the real property where the Spiveys' home was located and upon which the new house was to be constructed. This promissory note contained a statement providing that no modification of the note or any agreement securing the note was effective unless in writing and signed by the borrower and the lender.
"The Spiveys executed a second promissory note, also secured by a mortgage on their real property, to First Commercial Bank on October 31, 1990, in the amount of $332,000. On the face of this note, the purpose is stated as being `construction' and `personal.' The Spiveys also, at the same time, executed a construction loan agreement, which stated that the purpose of the loan was to pay the cost of construction. Both the note and the loan agreement contained statements providing that no modification of the note was effective unless in writing and signed by the borrower and the lender. The Spiveys also signed a `Truth-in-Lending Disclosure Form.' On that form, under the column entitled `Amounts Paid to Others on My Behalf,' there are no entries.
"On November 6, 1990, First Commercial disbursed funds from the Spiveys' construction line of credit to satisfy the business debts of Curt's Cars, Inc., and Curtis Spivey. The Spiveys contend that the disbursement was made without their knowledge or acquiescence. The evidence reflects that the promissory note executed by the Spiveys on October 31, 1990, was altered by First Commercial after they had signed it, to add the designation `Master Note,' to add the designation `Amended,' and to list the loan numbers of Curt Spivey's business loans. The Bank contends that the Spiveys did not complain about the disbursement of funds from the October 31, 1990, line of credit until July 1991. The Spiveys argue that they complained to the Bank upon learning of the disbursement.
"On May 20, 1991, the Spiveys signed a renewal note, which matured on August 20, 1991. The Spiveys made none of the interest payments on that loan, and on September 3, 1991, First Commercial sent a letter to the Spiveys informing them that they were in default. First Commercial Bank then sued the Spiveys on the promissory note of May 20, 1991, and sought foreclosure of the mortgage securing the note. The Spiveys sued First Commercial, alleging fraud and breach of contract. The cases were consolidated for trial."
681 So.2d at 121-22. (Emphasis in original.)
Other evidence presented at the second trial, viewed in the light most favorable to Sheryl Spivey, indicated the following: The Spiveys used the available funds from their construction line of credit after being falsely told by a representative of First Commercial, Don Garvick, that the bank would take care of the apparent shortfall in construction funds caused by the disbursement of those funds to satisfy the business debts of Curt's Cars, Inc., and Curtis Spivey. In reliance on Garvick's representations that everything would be taken care of, the Spiveys renewed the note on May 20, 1991. The disbursement of funds from the Spiveys' construction line *1320 of credit to satisfy the business debts of Curt's Cars, Inc., and Curtis Spivey ultimately had an adverse impact on Curtis Spivey's automobile business, and it eventually led to the bank's foreclosure of the mortgage securing the May 20, 1991, note. Because of the reduction in their construction line of credit, the Spiveys were forced to divert money from Curtis Spivey's business in an attempt to weatherproof their partially constructed house before it was damaged. This led to the demise of the business and the loss of the Spiveys' primary source of income. The Spiveys eventually filed for bankruptcy protection; Curtis Spivey lost his business and both he and his wife lost their real property, including their old house, the new one under construction, and approximately 21 acres of land. During this period, the Spiveys were under pressure by creditors and Sheryl Spivey was required to go back to work to help support her husband and three children.
The following issues are presented by First Commercial in its appeal:
1) Whether the trial court erred in refusing to enter a judgment for First Commercial as a matter of law on the ground that there was insufficient evidence that First Commercial's actions proximately caused the damage claimed by Sheryl Spivey;
2) Whether the trial court erred in refusing to enter a judgment for First Commercial as a matter of law on the ground that Sheryl Spivey had waived her claims for damages;
3) Whether the trial court erred in refusing to grant First Commercial a new trial on the ground that after closing arguments additional verdict forms were prepared and submitted to the jury;
4) Whether the trial court erred in refusing to order a reduction of the $500,000 compensatory damages award;
5) Whether the trial court erred in refusing to order a reduction of the $500,000 punitive damages award.
The cross appeal involves a single issue: Whether the trial court erred in denying Curtis Spivey's motion for a new trial on the ground that the court had improperly admitted evidence indicating that he had orally agreed with First Commercial to pay his business debts with the proceeds from the construction loan.
We will address these issues seriatim.
First Commercial contends, as to its first issue, that there was insufficient evidence of proximate cause to submit Sheryl Spivey's fraud claim to the jury. First Commercial argues that the Spiveys mismanaged their money and that that mismanagement, not any fraud on its part, was the proximate cause of the financial losses and emotional distress Sheryl Spivey claimed.
Proximate cause is an essential element of a fraud claim. City Realty, Inc. v. Continental Casualty Co., 623 So.2d 1039 (Ala.1993). Therefore, it was necessary for Sheryl Spivey to present sufficient evidence to allow the jury to reasonably conclude that First Commercial's actions had proximately caused the financial losses and emotional distress she alleged. After carefully examining the record, we agree with First Commercial that there was considerable evidence suggesting that the Spiveys had mismanaged their personal finances and that the mismanagement may have contributed to their financial plight. However, the record also contains evidence, including the testimony of the Spiveys' certified public accountant, Dennis Cameron, indicating that the Spiveys were in good enough financial shape before the improper disbursement of the construction loan proceeds to meet their obligations to their creditors. Although the evidence regarding this element of Sheryl Spivey's fraud claim was in dispute, it was, when viewed in the light most favorable to Sheryl Spivey, sufficient to allow the jury to find that First Commercial's actions had set in motion the chain of events that ultimately led to the damage she claimed.
Citing various cases, First Commercial also contends, as to its second issue, that it was entitled to a judgment as a matter of law because Sheryl Spivey, after she and her husband had learned that the bank had disbursed part of those funds to pay his business debts, used the available funds from the construction line of credit and because *1321 Sheryl Spivey signed the renewal note on May 20, 1991. First Commercial's basic argument is that Sheryl Spivey waived her breach of contract and fraud claims by spending the construction funds and by acknowledging in writing her liability under the note. We note, however, that there was evidence indicating that the Spiveys used the construction loan proceeds only after informing Garvick that the bank had improperly disbursed part of those funds and only after being told by Garvick that the bank would take care of any shortfall in construction funds. There is also evidence indicating that the Spiveys signed the May 20, 1991, renewal note in reliance on Garvick's statements that the misunderstanding surrounding the use of the construction loan proceeds would be taken care of. Whether Sheryl Spivey intended to relinquish her legal rights against the bank by using the remaining construction funds after learning of the bank's disbursement of some of those funds or by signing the May 20, 1991, renewal note was a question for the jury. First Commercial apparently recognized this, because it did not move for a directed verdict on this ground; of course, moving for a directed verdict was a prerequisite to challenging the sufficiency of the evidence on appeal. Barnes v. Dale, 530 So.2d 770 (Ala.1988). Instead, First Commercial requested, and was granted, an instruction on the defense of waiver. The jury obviously rejected this defense. We find no merit in this contention.
With respect to First Commercial's third issuewhether it was entitled to a new trial on the ground that after closing arguments additional verdict forms were prepared and submitted to the jurythe complaint indicates that both of the Spiveys claimed damages based on allegations of wrongful conduct by First Commercial. Evidence was introduced at the trial pertaining to First Commercial's dealings with both Curtis Spivey and Sheryl Spivey and, although the parties' requested jury instructions make references to "plaintiff" and "plaintiffs," nothing in those requested jury instructions reasonably suggests that Sheryl Spivey's recovering under her claims was in any way dependent upon Curtis Spivey's recovering under his claims. (In fact, this Court specifically held in Spivey I, supra, that the evidence would not support an instruction to the jury that Curtis Spivey had acted as his wife's agent in their dealings with First Commercial. See 681 So.2d at 123.) Based upon the complaint, the evidence presented during the trial, and the verdict forms proposed by the Spiveys, the trial court prepared verdict forms for submission to the jury. Those verdict forms referred to the Spiveys collectively as the "plaintiffs" and did not specifically state that the jury could find for Sheryl Spivey without finding for Curtis Spivey, or vice versa.
After closing arguments were concluded on Friday, March 15, 1996, the trial court instructed the jury that the "plaintiffs" sought to recover damages based on allegations of breach of contract and fraud. It further instructed the jury as follows:
"Now, the first form of verdict which we're going to submit to you is this: If after a full and careful consideration of all of the evidence you are reasonably satisfied therefrom that the Plaintiffs, Curtis T. Spivey III and Sheryl H. Spivey, are entitled to recover from the Defendant, First Commercial Bank, then you should use the form of verdict which reads: "We, the jury, find in favor of the Plaintiffs and against the Defendant and assess the Plaintiffs' damages as follows: Compensatory damages in the amount of blank dollars.'
"In the event you find for the Plaintiffs and decide they are entitled to compensatory damages, you will first fill this out here, write out in words the amount of compensatory damages you award, and then that same amount you will put in the parentheses [in] numbers. You will put the same number once in words and then in numbers, just telling us the amount of compensatory damages you're awarding. Next, punitive damages in the amount of blank dollars. And here you will do the same.
"In the event you find for the Plaintiffs and in the event you find they're entitled to punitive damages, you would write out that amount first in words and then that same amount you would put in the parentheses in numbers. And you will date it *1322 this the blank day of blank 1996. And these forms will then be signed by your foreperson.
"On the other hand, if after a full and fair consideration of all the evidence, you are not reasonably satisfied therefrom that the Plaintiffs, Curtis T. Spivey III and Sheryl H. Spivey, are entitled to recover from the Defendant, First Commercial Bank, you should use the form of verdict which reads: We, the jury, find in favor of the Defendant.' If this is your verdict, you would use this form. You will then write in today's date and your foreman or foreperson would sign this verdict form if this is the verdict that you wish to return to the Court."
Immediately following the trial court's instructions, but before the case was submitted to the jury, the Spiveys requested that the trial court clarify to the jury that it could find for Sheryl Spivey without also finding for Curtis Spivey, or vice versa. The trial court declined this request and told the jury that it would not begin its deliberations until the following Monday morning. On Monday, before the case was submitted to the jury, the Spiveys requested that the trial court submit to the jury additional verdict forms that would clearly indicate that the jury could make a finding for one of them without making a corresponding finding for the other. The Spiveys requested, in the alternative, that the trial court instruct the jury that it could modify the verdict forms as needed if it found that only one of the Spiveys was entitled to recover. There was some dispute at that time as to whether the Spiveys' attorneys had agreed on Friday to the verdict forms prepared by the trial court. After reconsidering its earlier ruling, the trial court agreed to provide additional verdict forms to the jury. The following colloquy between the trial court and the attorneys then took place:
"THE COURT: All right. It is my recollection that I prepared the verdict forms and I handed them to counsel. My recollection is that [the Spiveys' attorney] and [First Commercial's attorney] were standing in front of the bench when I submitted them to them and said these are the verdict forms that I prepared and asked them if they agreed. I was later given back the forms and I do not recall anybody objecting to them.
"I also recall, it seems to me, the Plaintiffs requested a verdict form in the form that I prepared them among your jury charges that you requested [sic]. But it also seems to me that I think the Plaintiffs are entitled to have a determination as to whether either one of them are entitled to recover under the evidence.
"So it really seems to me that we're not at a juncture where it would be too late to give the jury some additional instructions on whether a verdict may be rendered in favor of one or the other of the Plaintiffs. So it seems to me that it would be better to allow them to have verdict forms which would allow a verdict in favor of one or the other or both. So, [it] seems to me that I think the evidence would allow that type of recovery and, therefore, it seems to me that we ought to allow that kind of verdict form to be submitted to them.
"So I think maybe what I'll do is have some additional forms prepared which would allow individual recovery and also still use the same form that I've got and just tell them that they have to make that decision.
"[The Spiveys' attorney]: That's fine.
"THE COURT: I understand the Defendants have an objection to that....
"[Mr. Duckone of First Commercial's attorneys]: Judge, for the record we do object. A jury charge on that issue was not requested at the charge conference and it was not made the basis of any argument presented to the jury. And again, I think at this time it would be emphasizing that point by going back and giving the jury additional information on that basis. I think if the jury has a question about it, we just let them come back with it.
"[Mr. Armstrongone of First Commercial's attorneys]: The case was definitely argued based on those forms, and it would have been argued differently if that was going to be the emphasis.

*1323 "THE COURT: I understand. Let me prepare some additional forms and then we willI'll explain these all to the jury. All right.
"(Bench conference off the record.)
"[Mr. Duck]: Judge, for the record the Plaintiffs' requested jury charge 37.03 on page thirty-three of their requested charges, and it is nearly identical to the charge you gave except for you included a paragraph where they could find punitive damages. Since they requested this charge and it was given, we object to them now coming back and after arguments are already made requesting a different jury charge.
"[Mr. Duck]: For the record, Judge, we object to the revised verdict form.
"THE COURT: Okay. I understand, and I'm going to overrule your objection.
"All right. What I think we ought to do is bring the jury back in and let me explain to them, you know, I think I need to explain to them that we've got additional verdict forms that we have to submit to them."
First Commercial did not object to the jury instructions that the trial court had given on Friday, and it did not request to reopen closing arguments or otherwise explain to the trial court exactly how it would have argued its case differently if it had known that the jury would be provided with the additional verdict forms. In giving the new verdict forms to the jury, the trial court explained:
"THE COURT: Good morning, ladies and gentlemen. It's good to see everybody this morning. I have decided that I need to give you just a few more instructions. After I gave you the instructions on Friday, I showed you some verdict forms that I was going to submit to you that you would have for your consideration in deciding this case.
"I've decided that I'm going to give you some additional options that you're going to have, and I want to just briefly explain these options to you.
"You will remember, first of all, I had two forms that I explained to you on Friday. One of those forms provided that in the event you find for the Plaintiffs, Mr. and Mrs. Spivey, you would award whatever damages you determine are appropriate and fill that form in. And then the other form was if you find for the Defendant against the Plaintiffs, then you would use that form.
"I've got some additional options that I'm going to submit to you and that you will have for your consideration. I'm going to explain these to you, but basically these options provide that in the event you find for one Plaintiff or the other, you would use one of these forms. So let me read these to you so that you will understand these additional options that are available to you.
"If after a full and fair consideration of all the evidence you're reasonably satisfied that the Plaintiff, Sheryl H. Spivey, is entitled to recover from the Defendant, First Commercial Bank, then you should use the form of the verdict which reads: "We, the jury, find in favor of the Plaintiff, Sheryl H. Spivey, and against the Defendant and assess damages as follows.'
"And then you have the option of compensatory damages or punitive damages, as I explained to you Friday with regard to both Plaintiffs. And you would use this form if you find for Mrs. Spivey but not in favor of Mr. Spivey on the claim against First Commercial Bank. And then this form also says, We, the jury, find in favor of the Defendant on the claim of Curtis T. Spivey, III.'
"So in the event that you find that only one of the Plaintiffs, that is, Mrs. Spivey, is entitled to recover, you would use this form and then fill it out. And your foreperson would sign this form.
"And then the other option would be: If after a full and fair consideration of all the evidence you're reasonably satisfied therefrom that the Plaintiff, Curtis T. Spivey III, is entitled to recover from the Defendant, First Commercial Bank, then you should use the form of verdict which reads: `We, the jury, find in favor of the Plaintiff, Curtis T. Spivey, III, and against the Defendant and assess damages as follows.' *1324 And here you have the options of compensatory and/or punitive damages which you will fill out.
"And then, "We, the jury, find in favor of the Defendant on the claim of Sheryl H. Spivey.' So you have the options of finding for one or the other of the Plaintiffs or both of the Plaintiffs or for the Defendant on the various claims as I have explained them to you. So these are the options that you have for your consideration."
First Commercial contends that it relied on the original verdict forms that were prepared by the trial court and that it focused its closing argument almost exclusively on the claims made by Curtis Spivey. Relying on Smitherman v. Beavers, 628 So.2d 594 (Ala.1993), First Commercial argues that it was prejudiced by the submission of the additional verdict forms because, it says, until that point it had not anticipated that the jury would have the option of finding in favor of one of the Spiveys without finding for the other. We find this contention unpersuasive.
First Commercial is correct that Rule 51, Ala.R.Civ.P., requires that the parties be informed before closing arguments of the jury instructions the trial court intends to give. Jury instructions cannot be materially modified by the trial court after closing arguments so as to prejudice a party in the case. See Smitherman, supra, wherein this Court found prejudicial error when the jury was charged on the sudden emergency doctrine after a requested instruction on that doctrine had been refused and after neither party's attorney had mentioned the doctrine in his closing argument. It is equally established, however, that the trial court has the responsibility to give the jury instructions and verdict forms that will allow it to adequately respond to the evidence and the issues presented. Dardess v. SouthTrust Bank, 555 So.2d 746 (Ala.1989). We conclude from our review of the record that the trial court acted properly in providing the jury the additional verdict forms and in giving the instructions explaining those forms.
The record indicates that in their complaint both Curtis Spivey and Sheryl Spivey stated claims for damages based on allegations of wrongful conduct directed by First Commercial toward each of them; that evidence pertaining to each plaintiff's claims was presented; that the requested jury instructions submitted by the parties did not reflect an understanding that Sheryl Spivey's claims were dependent upon Curtis Spivey's claims; and that following closing arguments the trial court instructed the jury that the "plaintiffs" were seeking damages. Under these circumstances, we conclude that there was no violation of Rule 51. First Commercial made a tactical decision, based on the wording of the initial verdict forms, to focus its closing argument on Curtis Spivey's claims. It did so with full knowledge that the pleadings and the evidence presented claims by both of the Spiveys and with full knowledge that this Court, in its opinion in Spivey I, supra, had held that it was not entitled to a jury instruction on agency (i.e., an instruction that Curtis Spivey was acting as an agent for Sheryl Spivey in his dealings with First Commercial). The trial court instructed the jury on Friday that both of the Spiveys ("the plaintiffs") were presenting claims for damages. These instructions were taken in part from the requested jury instructions submitted by the parties and they indicate that the trial court did not understand those requested instructions to suggest that Sheryl Spivey's claims were derivative of Curtis Spivey's claims. First Commercial did not object to the trial court's initial instructions; it objected only to the additional verdict forms and the accompanying explanatory instructions. It should not have come as a surprise to First Commercial, however, that the trial court corrected itself and agreed to submit the additional verdict forms along with explanatory instructions, especially after the trial court had instructed the jury that both Curtis Spivey and Sheryl Spivey sought to recover damages based on allegations of wrongful conduct directed at each of them. In any event, Rule 51 was complied with in this case. First Commercial should have been aware before its closing argument that Sheryl Spivey's claims were not derivative in nature. The trial court's instructions on Monday, which merely explained the nature of the additional verdict forms, were entirely consistent with the instructions *1325 that the trial court had given on Friday. The trial court was duty-bound to provide the jury with verdict forms that would allow it to adequately respond to the evidence and the issues presented. Dardess, supra; Whitmore v. First City National Bank of Oxford, 369 So.2d 517 (Ala.1979).
First Commercial further contends that the trial court erred in refusing to reduce the $500,000 compensatory damages award. The evidence indicated, however, that First Commercial's fraudulent conduct cost Sheryl Spivey the primary source of income for her and her family, as well as her equity interest in the Spiveys' two houses and the land on which they were constructed. The old house and the land (approximately 21 acres), which were not encumbered by a mortgage before the transaction made the basis of this action, were valued at approximately $117,000. The evidence also indicated that Sheryl Spivey was humiliated and embarrassed as a result of the family's financial problems, which eventually led to the Spiveys' filing a personal bankruptcy petition. Sheryl Spivey testified that her life had been turned upside down by First Commercial's actions:
"A. In 1991, I realized that I was going to have to go back to work. And I had a degree in secondary education, but I needed to renew my teaching certificate. So I went back to school in the summer of '91, and I did that.
"Q. And have you been teaching since?
"A. Well, I taught part-time. I substituted in the county for about a year, and then I got this job at Cathedral two years ago.
"Q. Okay. In 1991 and 1992, were you and your husband able to pay all your bills?
"A. No, sir.
"Q. What happened?
"A. We had to declare bankruptcy. We had creditors calling, creditors coming by, harassing us. We had to file bankruptcy. We didn't have another choice.
"Q. And was that bankruptcy filed by you?
"A. I had to file it, too. It was jointly, my husband and I and his business.
"Q. And his business. Do you know when that bankruptcy was filed or declared?
"A. I think it was in the summer of '94.
"Q. Okay. Up until October of 1990, was your plan to complete the construction of that home?
"A. Yes.
"Q. And did you have any plans about long range staying there?
"A. We planned to make that our home. I wanted our children to grow up there. It was enough land so they could have had houses there on that same property. Yes, we wanted to live there permanently.
"Q. All right. As it became apparent that the money had been diverted and used to pay unsecured notes and later as it became apparent that the bank was not going to fix that problem, did that have any effect on you emotionally and mentally?
"A. Yes.
"Q. Tell us about that.
"A. Well, it was tough to go from having everything that we needed and having the lifestyle that we had planned on. We had been married for sixteen years at that point. We had saved. We had arrived we felt like. We had everything that we had dreamed about at that point. And then we lost everything, and it was devastating.
"Q. Did it have any effect on your marriage to your husband?
"A. Yes. At times, yes, it certainly did.
"Q. I'm not trying to be insensitive, but I think you need to tell the folks how it affected your marriage.
"A. We had problems through this. Whenever there's not the money to pay the bills, you're going to have problems, I think.
"Q. And today, have you and your husbandare you able to borrow any money from any bank?
"A. Not with the bankruptcy on our record.

*1326 "Q. And are you able to go buy a house?
"A. No, sir."
After examining the record, we conclude that most of the compensatory damages award, perhaps as much as $450,000, could have been composed of damages for emotional distress. It is settled, of course, that when a court assesses the question of excessiveness of compensatory damages the focus is on the plaintiff. A court reviewing a verdict for compensatory damages must determine what amount a jury, in its discretion, may award, viewing the evidence from the plaintiff's perspective. A trial court may not substitute its judgment for that of the jury when the jury has returned a compensatory verdict that is supported by the record. A trial court may not conditionally reduce a jury verdict merely because it believes the verdict overcompensates the plaintiff. See Pitt v. Century II, Inc., 631 So.2d 235, 239 (Ala.1993). There is no fixed standard for ascertaining the amount of compensatory damages that may be awarded for emotional distress. The determination of how much to award is left to the sound discretion of the jury, subject only to review by the court for a clear abuse of that discretion. Alabama Power Co. v. Mosley, 294 Ala. 394, 318 So.2d 260 (1975). After carefully reviewing the evidence, we find no abuse of discretion on the jury's part in this case. Although the evidence indicated that Sheryl Spivey may have lost at least $58,500 in equity in her old house and land, the jury apparently found that Sheryl Spivey had also suffered significant emotional distress as a result of First Commercial's actions. We cannot hold that the evidence would not support such a finding. In this respect, we find this case materially indistinguishable from Duck Head Apparel Co. v. Hoots, 659 So.2d 897 (Ala.1995) (upholding compensatory awards of $2,000,000; $1,000,000; and $500,000 for emotional distress suffered by three sales representatives defrauded out of their sales commissions); and Sperau v. Ford Motor Co., 674 So.2d 24 (Ala.1995), judgment vacated, ___ U.S. ___, 116 S.Ct. 1843, 134 L.Ed.2d 945 (1996) (upholding compensatory award of $500,000 for emotional distress suffered by owner of a failed Ford dealership as a result of fraud perpetrated by Ford).
As to First Commercial's contention that the trial court erred in refusing to reduce the punitive damages award, we note that we have reviewed the award based on the pertinent factors set out in Green Oil Co. v. Hornsby, 539 So.2d 218 (Ala.1989), and BMW of North America, Inc. v. Gore, 517 U.S. ___, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996). Given the overall reprehensibility of First Commercial's actions and the effect those actions had on Sheryl Spivey and her family, we cannot conclude that the one-to-one ratio of compensatory damages ($500,000) to punitive damages ($500,000) present in this case is unconstitutionally excessive.
On his cross appeal, Curtis Spivey contends that the trial court erred in allowing Don Garvick to testify that Curtis Spivey and Garvick had an oral agreement that First Commercial could use part of the proceeds from the construction loan to satisfy Curtis Spivey's business debts. Curtis Spivey argues that Garvick's testimony should have been excluded under the parol evidence rule. First Commercial argues that the parol evidence rule was not a bar to Garvick's testimony, which, First Commercial says, was relevant in its attempt to disprove Curtis Spivey's fraud claim.
The applicability of the parol evidence rule necessarily rests upon the existence of a valid written instrument that completely and accurately expresses the obligations assumed by or imposed upon the parties. The very purpose of the parol evidence rule is to protect the verity of such an instrument. As noted by this Court in Hibbett Sporting Goods, Inc. v. Biernbaum, 375 So.2d 431, 434 (Ala.1979), quoting Sellers v. Dickert, 185 Ala. 206, 213, 64 So. 40, 43 (1913), "[t]he implication, at least, is that the executed writing contains all stipulations, engagements and promises the parties intend to make or to assume, and that all previous negotiations, conversations, and parol agreements are merged in the terms of the instrument." In other words, the parol evidence rule does not apply to every contract of which there exists written evidence; *1327 it applies, instead, only when the parties to an agreement reduce it to writing, and agree or intend that the writing shall be their complete agreement. Biernbaum, supra, at 434, citing 3 Williston, Contracts, § 633. As a general proposition, therefore, the parol evidence rule applies to contract actions, not actions in tort. Ramsay Health Care, Inc. v. Follmer, 560 So.2d 746 (Ala. 1990). Curtis Spivey alleged that he had a construction loan agreement with First Commercial and that First Commercial had breached that agreement. However, he also alleged, in the alternative, that he had been fraudulently induced into executing a document that purported to be, but was not, an agreement providing solely for construction funds. By its very nature, his fraud claim presumed, and, in fact, was dependent on, the invalidity of the construction loan agreement. Contrary to his contentions, it makes no difference here that First Commercial, not Curtis Spivey, sought to introduce the parol evidence. As far as his fraud claim was concerned, there was no written instrument requiring the protection of the parol evidence rule. The trial court did not err in admitting Garvick's testimony into evidence on the question whether First Commercial had fraudulently induced Curtis Spivey into executing the construction loan documents.
For the foregoing reasons, the judgment entered on the jury verdict is affirmed.
1951862AFFIRMED.
1951872AFFIRMED.
ALMON, SHORES, and COOK, JJ., concur.
BUTTS, J., concurs specially.
MADDOX and SEE, JJ., concur in the result.
HOOPER, C.J., concurs in part and dissents in part.
BUTTS, Justice (concurring).
I concur. However, I write to note that once again this Court has applied the United States Supreme Court's opinion in BMW of North America, Inc. v. Gore, 517 U.S.___, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996), without addressing the primary issue raised by the Supreme Courthow a defendant may be assured of adequate notice of the conduct that will subject him to punishment and adequate notice of the severity of the punishment he might expect for such conduct. See my dissent in Foremost Ins. Co. v. Parham, 693 So.2d 409 (Ala.1997).
MADDOX, Justice (concurring in the result).
I concur in the result of the opinion, but I am constrained to point out that it is difficult for me to do so in view of the fact that on the first appeal of this case I strongly felt that the plaintiffs were not entitled to the new trial that ultimately resulted in the judgments the Court is now reviewing.
This is the second time this case has been here. In the first appeal, Spivey v. First Commercial Bank, 681 So.2d 120 (Ala.1995), a jury had found for the defendant and a judgment had been rendered in favor of the defendant on that jury verdict. This Court, on June 24, 1994, initially affirmed that judgment, without writing an opinion, and on July 29, 1994, this Court also overruled the plaintiffs' request for a rehearing; however, on August 16, 1994, a majority of this Court, on its own motion, granted a rehearing, withdrew its no-opinion orders, and wrote an opinion in which it granted the Spiveys a new trial. Three Justices dissented from that portion of the opinion ordering a new trial.[1]
In view of the fact that I was so convinced that under Alabama law the plaintiffs were not entitled to a new trial, I was almost compelled to dissent in this case, in which *1328 one of those plaintiffs was awarded a total of $1 million; however, as I stated in another case with a similar procedural history, a majority of this Court, as it was then constituted, granted the plaintiffs' request for a new trial and the plaintiffs thereby became "entitled to a review of the new trial without regard to my dissenting views on the first appeal." Black Belt Wood Co. v. Sessions, 514 So.2d 1249, 1257 (Ala.1986) (Maddox, J., concurring specially).
HOOPER, Chief Justice (concurring in part and dissenting in part).
Before closing arguments were made in this case, the trial court prepared verdict forms that collectively referred to Curtis Spivey and Sheryl Spivey as "the plaintiffs," and after closing arguments had been completed, the jury was instructed in accordance with those forms. The Spiveys then requested that the trial court clarify its instructions. The Spiveys requested that the trial court inform the jury that it could rule in favor of either of the plaintiffs individually without finding for them together. The trial court refused the request. The following day of trial, before jury deliberations began, the Spiveys requested that the trial court submit to the jury additional verdict forms indicating that the jury could find for the Spiveys collectively or individually. The trial court agreed to this request. The attorneys for First Commercial objected, arguing:
"[Mr. Duck:] ... A jury charge on that issue was not requested at the charge conference and it was not made the basis of any argument presented to the jury....
"[Mr. Armstrong:] The case was definitely argued based on those forms, and it would have been argued differently if that was going to be the emphasis."
The majority concludes that there was no violation of Rule 51, Ala. R. Civ. P., because the additional verdict forms were not inconsistent with the instructions previously given to the jury and because the trial court was obligated to provide verdict forms that allowed the jury to perform its duties. Rule 51 states:
"At the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file and, in such event, shall serve on all opposing parties written requests that the court instruct the jury on the law as set forth in the requests. The court shall inform counsel of its proposed action upon the requests prior to their arguments to the jury, but the court shall instruct the jury after the arguments are completed."
First Commercial argues that Rule 51 was violated by the trial court's decision, after closing arguments had been made, to give the jury additional verdict forms, where the previous jury instructions had merely referred to the plaintiffs collectively. I agree. This Court stated in Smitherman v. Beavers, 628 So.2d 594, 595 (Ala.1993):
"Rule 51 requires the trial court to inform the parties' counsel of its ruling on proposed jury instructions before the parties make their closing arguments; compliance with the rule permits a more intelligent closing argument and alerts counsel to areas for objection at the conclusion of the charge. Nevertheless, the court's failure to comply with Rule 51 is not reversible error unless the court refuses to comply even after its attention has been called to the requirements of the rule or prejudice results from the failure to comply."
(Citations omitted.) The Smitherman Court concluded that the plaintiffs in that case were prejudiced as a result of the trial court's decision, after closing arguments had concluded, to instruct the jury on the "sudden emergency doctrine." In today's case, before closing arguments, the trial court, without objection, provided each party with the general verdict forms it intended to give the jury. After closing arguments and after the original instructions were given to the jury, the trial court, at the request of the Spiveys, altered its instructions so that the jury could find for the Spiveys individually.
I believe this change substantially prejudiced First Commercial. Because of the proposed instructions and forms, First Commercial focused its closing arguments on the actions of Curtis Spivey; the evidence presented at trial had focused on his actions. First Commercial argues that its closing argument would have differed materially if it *1329 had known that individual verdict forms would be submitted to the jury. The majority calls First Commercial's decision to focus on Curtis Spivey's actions a tactical decision. That it was, but it was a tactical decision based on what it believed the trial court was going to submit to the jury. This change, after the conclusion of closing arguments, violated Rule 51 and constituted reversible error.
Therefore, I respectfully dissent from this Court's holding with regard to Sheryl Spivey. However, I concur with this Court's holding as to Curtis Spivey, in spite of the violation of Rule 51. The jury found for First Commercial on the claims brought by Curtis Spivey; therefore, as to his claims, the violation of Rule 51 was harmless error.
NOTES
[1] See, Spivey v. First Commercial Bank, 681 So.2d 120, 124 (Ala.1995) (Butts, J., concurring, in part and dissenting in part, joined by Maddox and Houston, JJ.). The initial trial was videotaped, and the videotape record did not indicate that the plaintiffs had objected to the failure of the trial court to instruct the jury on the Statute of Frauds, which formed the basis for the reversal of the judgment and the award of a new trial. The three dissenting Justices were of the view that the issue upon which the Court granted a new trial "[was] not properly before this Court for review." 681 So.2d at 124.