709 So.2d 1222 (1998)
WINN DIXIE OF MONTGOMERY, INC., and Robert Hagan III
v.
Mary Catherine COLBURN.
1961146.
Supreme Court of Alabama.
February 6, 1998.
*1223 A. Joe Peddy and Thomas Coleman, Jr., of Smith, Spires & Peddy, P.C., Birmingham, for appellants.
Stephen D. Heninger and Joseph W. Buffington of Heninger, Burge & Vargo, Birmingham, for appellee.
BUTTS, Justice.
Mary Catherine Colburn sued Winn Dixie of Montgomery, Inc., and Robert Hagan, alleging that they were negligent or wanton in filling a prescription for her. Specifically, Colburn claimed that Robert Hagan, the pharmacist at a store operated by Winn Dixie of Montgomery, wantonly or negligently dispensed Fiorinal # 3 as a substitute medication for a prescription of Sedapap. The jury returned a general verdict for Colburn and against Winn Dixie and Hagan, awarding damages of $130,000. The trial court entered a judgment on that verdict.
Winn Dixie and Hagan claim that the judgment is due to be reversed or remitted, arguing that the evidence was insufficient to support the damages award. They also argue that the judgment is excessive and therefore should be reversed or remitted or the case remanded on the basis that the trial court made no written findings indicating it had considered the factors set out in Hammond v. City of Gadsden, 493 So.2d 1374 (Ala.1986), and Green Oil Co. v. Hornsby, 539 So.2d 218 (Ala.1989).
The standard for testing the sufficiency of the evidence when the sufficiency is challenged by either a motion for directed verdict or a motion for JNOV is the "substantial evidence rule." Ogle v. Long, 551 So.2d 914 (Ala.1989).[1] "Substantial evidence" is "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assur. Co. of Florida, 547 So.2d 870, 871 (Ala.1989). In considering the question of the sufficiency of the evidence, we are required, as was the trial court, to view the evidence in the light most favorable to the nonmovant. Bussey v. John Deere Co., 531 So.2d 860, 863 (Ala.1988).
Viewed in the light most favorable to Colburn, the evidence suggests the following: Colburn consulted Dr. Mildred Howell, complaining of migraine headaches. Dr. Howell, knowing that Colburn was allergic to codeine, prescribed Sedapap, which does not contain codeine, to treat Colburn's migraine headaches. Dr. Howell signed the prescription form over a line that stated "product selection permitted"; that statement means that a generic equivalent could be substituted for the name-brand product. Colburn took her prescription to a pharmacy at a Winn Dixie supermarket to have it filled. The Winn Dixie pharmacy did not have Sedapap in stock. Hagan testified at trial that he looked up Sedapap on the Winn Dixie computer drug profile, and that it reported that Sedapap and Fiorinal # 3 were identical. However, Fiorinal # 3, which was substituted for Sedapap, is not a generic equivalent to Sedapap; in fact, it contains codeine, the very thing to which Colburn was allergic. In his prescription-error report, Hagan wrote that *1224 he had substituted the Fiorinal # 3 because it was the "closest formula" to Sedapap and he felt certain that the physician would allow the substitution. In addition, at trial Colburn presented evidence indicating that Hagan telephoned Dr. Howell to ask if he could substitute Fiorinal # 3 for Sedapap, and that Dr. Howell had her assistant tell him that it could not be substituted.
When Colburn took the medication she received from the Winn Dixie pharmacy, she went into anaphylactic shock. Within minutes of taking the Fiorinal # 3, Colburn began to feel that her tongue was swelling and that her chest was tightening. Her eyes started to water and her throat began to close, so that in a matter of minutes she could barely breathe or speak. She said she was terrified and thought that she was dying. Her husband put her in an automobile to drive her to a hospital emergency room, but her condition worsened on the way. She testified that she was afraid they were not going to make it to the hospital in time to save her life. Colburn's husband had to stop the car and telephone for an ambulance and ask the ambulance operators to meet them halfway. When they reached the ambulance, Colburn received intravenous Benadryl and Epinephrine to counteract the allergic reaction. Colburn then went on to the emergency room, where she received more medication to counteract the effects of the Fiorinal # 3. She was allowed to return to her home that night, but she continued to feel the side effects, including a severe headache that lasted several days. She presented evidence indicating that but for her husband's swift reaction she likely would have died of anaphylactic shock. She testified that she is still afraid to take prescription drugs.
Winn Dixie and Hagan contend that because Colburn suffered no permanent physical injury the $130,000 award is out of proportion to her injury. Winn Dixie and Hagan do not address the propriety of the jury's finding of liability. They simply argue that the amount of the award bears no reasonable relationship to the harm suffered by the plaintiff. However, Winn Dixie and Hagan consented to the jury's use of a general verdict form that did not delineate separate amounts of compensatory damages and punitive damages. Therefore, this Court has no way to determine what portion of the award was intended as punitive damages. In fact, the jury may have intended the entire amount to be compensatory damages.
However, assuming, out of an abundance of caution and in order to preserve Winn Dixie and Hagan's due process rights, that part of the $130,000 award was punitive in nature, we will apply the three "guideposts" set out in BMW of North America, Inc. v. Gore, 517 U.S. 559 at 575-76, 116 S.Ct. 1589 at 1599,134 L.Ed.2d 809 (1996), to determine whether the punitive award is excessive.
The first "guidepost" that BMW sets out is the reprehensibility of the defendant's conduct. "Perhaps the most important indicium of the reasonableness of a punitive damages award is the degree of reprehensibility of the defendant's conduct." BMW, 517 U.S. at 575, 116 S.Ct. at 1599. In BMW, the Supreme Court indicated that "indifference to or reckless disregard for the health and safety of others" is an aggravating factor associated with particularly reprehensible conduct. 517 U.S. at 576, 116 S.Ct. at 1599. Clearly, this aggravating factor was present in this case. There was evidence that Hagan telephoned Colburn's physician to ask if he could substitute Fiorinal # 3 for Sedapap and that the physician had her assistant tell him that it could not be substituted. Thus, the jury could have found that the pharmacist received specific instructions from the physician not to substitute the medication but did so anyway; thus, the jury could have found that Hagan acted with a reckless disregard for Colburn's safety. Further, the Winn Dixie computer drug profile erroneously reported that Sedapap and Fiorinal # 3 were identical; and the evidence indicates that, even once the error was discovered, Winn Dixie did not correct the information in the computer, thereby increasing the risk of further harm to its customers. This evidence supports a finding of reprehensibility on the part of Hagan and Winn Dixie that would warrant a large punitive damages award.
The second BMW guidepost for determining whether an award of punitive damages *1225 is excessive is the ratio of punitive damages to the actual harm inflicted upon the plaintiff. Because the jury awarded general damages, we cannot determine with certainty the ratio of punitive damages to compensatory damages. It is important to note that we do not consider that any compensatory award was based solely on economic loss; rather, we consider it to be based largely upon the obvious mental and emotional distress that Colburn endured because of her life-threatening experience. This Court, in First Commercial Bank v. Spivey, 694 So.2d 1316, 1326 (Ala.1997), emphasized: "There is no fixed standard for ascertaining the amount of compensatory damages that may be awarded for emotional distress. The determination of how much to award is left to the sound discretion of the jury, subject only to review by the court for a clear abuse of that discretion." In Spivey, this Court upheld a jury award of $1 million in damages, $500,000 of which was compensatory damages awarded for emotional distress arising from the defendant's fraudulent conduct that led to the foreclosure of the mortgage on the plaintiff's home. We conclude that it was well within the right of the jury to award Colburn $130,000 because she experienced the natural terror associated with what she believed to be imminent death. This terror was caused purely by Winn Dixie and Hagan's breach of the public trust in incorrectly dispensing medication by giving Colburn a medication to which she was deathly allergic. The record contains nothing to indicate that the amount of the jury award is excessive or even that it was punitive in nature. We have thoroughly reviewed the record, and in determining the possible ratio of punitive damages to compensatory damages we have considered the terror that Colburn experienced when she feared imminent death, as well as her physical pain, and her continued fear of taking prescription medications, along with any economic losses she may have incurred, and we conclude that the ratio is not excessive.
Finally, the last guidepost BMW gives for determining whether a punitive damages award was excessive is a comparison of the punitive award to the civil or criminal penalties that could be imposed for similar misconduct. In BMW, the Supreme Court considered whether the Alabama Deceptive Trade Practices Act, which provided a maximum penalty of $2,000 for a violation, was adequate to furnish BMW with notice of the severity of the punishment that would result from its deceptive practice. 517 U.S. at 583-85, 116 S.Ct. at 1603. In this present case, the maximum penalty under Alabama law for dispensing a different drug or different brand drug in lieu of that ordered or prescribed, without the express permission of the person ordering or prescribing the drug, is a $1,000 fine. Ala.Code 1975, § 34-23-8. We must point out that the dispensing of prescription drugs is a matter of public trust and that one who dispenses them carelessly endangers the health and safety of the consumer. A $1,000 fine is a meager sanction for such a serious offense and provides little basis for determining a meaningful punitive damages award.
Winn Dixie and Hagan next argue that the award, based on the general verdict, is due to be reversed or remitted because of the absence of any findings related to the factors set out in Hammond and Green Oil. They argue that the trial court's failure to make such findings violated their due process rights. Following the United States Supreme Court's remand of the BMW case, this Court reconsidered its earlier ruling in that case; it determined that the United States Supreme Court's "due process" guideposts were not intended to preclude a consideration of the factors of review already established by this Court in Hammond and Green Oil. See BMW of North America, Inc. v. Gore, 701 So.2d 507 (Ala.1997). In Hammond, this Court wrote:
"The cases have consistently held that in deciding whether a jury verdict is excessive because it is the result of passion, bias, corruption, or other improper motive, a trial judge may not substitute his judgment for that of the jury. We have also recognized that the trial judge is better positioned to decide whether the verdict is so flawed. He has the advantage of observing all of the parties to the trial plaintiff and defendant and their respective attorneys, as well as the jury and its reaction *1226 to all of the others. There are many facets of a trial that can never be captured in a record, so that the appellate courts are at a special disadvantage when they are called upon to review trial court action in this sensitive area, although increasingly they are required to do so. Therefore, it is not only appropriate, but indeed our duty, to require the trial courts to reflect in the record the reasons for interfering with a jury verdict, or refusing to do so, on grounds of excessiveness of the damages."

493 So.2d at 1378-79 (citations omitted) (emphasis added). See, also, Life Insurance Co. of Georgia v. Parker, 706 So.2d 1108 (Ala. 1997). In the instant case, the record does not reflect the trial court's reasons for refusing to interfere with the jury's verdict on the grounds of excessiveness. Because we are therefore unable to review its ruling on that issue, we must remand this cause to allow the trial court to make written findings on the question of excessiveness, in compliance with Hammond.
We affirm that portion of the judgment imposing liability. However, we remand this case for the trial court to make written findings on the issue of excessiveness of the punitive damages award, if, indeed, it determines that any of the award was punitive in nature. The trial court is directed to file a return with this Court within 28 days of the date of this opinion.
AFFIRMED IN PART AND REMANDED.
HOOPER, C.J., and SHORES, HOUSTON, and KENNEDY, JJ., concur.
MADDOX and SEE, JJ., concur in part and dissent in part.
SEE, Justice (concurring in part and dissenting in part).
I concur with the majority's remand of this case for the trial court to conduct a hearing pursuant to Green Oil Co. v. Hornsby, 539 So.2d 218 (Ala.1989), and Hammond v. City of Gadsden, 493 So.2d 1374 (Ala.1986); however, because the jury returned a general verdict in this case, I must respectfully dissent from the majority's application of the factors established in BMW of North America, Inc. v. Gore, 517 U.S. 559, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996), for determining whether a punitive award is excessive. Without a specific amount of compensatory damages and a specific amount of punitive damages, this Court cannot compute a ratio of punitive to compensatory damages, nor can it compare the punitive award with the relevant civil or criminal penalty. See Union Sec. Life Ins. Co. v. Crocker, 709 So.2d 1118 (Ala.1997) (See, J., dissenting). Accordingly, I would require the trial court, on remand, to determine the respective amounts of punitive and compensatory damages, and then to apply the analyses required under BMW and under Green Oil and Hammond.
MADDOX, J., concurs.
NOTES
[1] Rule 50, Ala. R. Civ. P., as amended effective October 1, 1995, renames the "motion for a directed verdict" and the "motion for a judgment notwithstanding the verdict" as a "motion for a judgment as a matter of law" and the "renewal of the motion for a judgment as a matter of law," respectively. The standard of review for a motion for a judgment as a matter of law is the same as for a motion for a directed verdict and a motion for a JNOV.