[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 704 
Arnold Price sued Meadowcraft Industries, Inc., in the Jefferson Circuit Court, alleging that Meadowcraft was negligent in failing to provide him a safe workplace. A jury returned a verdict in favor of Price, awarding him $60,000, and the trial court entered a judgment on that verdict. Meadowcraft appealed, and the Court of Civil Appeals affirmed the judgment. Meadowcraft Indus., Inc. v. Price, 817 So.2d 697
(Ala.Civ.App. 2000). We granted Meadowcraft's petition for certiorari review. We reverse and remand.
 Facts
Meadowcraft manufactures wrought-iron furniture and accessories. Meadowcraft retained Bama Handling Services, Inc., to install new conveyor-belt lines at its plant. Bama, in turn, employed Techmation, Inc., to resolve certain problems it had encountered with Meadowcraft's conveyor-belt system and to install additional software to manage the new conveyor-belt lines Bama Handling was installing. Price was employed by Techmation and was working at the Meadowcraft plant. It is undisputed that Bama Handling and Techmation were independent contractors and that Meadowcraft did not retain the right to control the manner or method in which Techmation or Bama Handling performed their work. It is also undisputed that Meadowcraft employee Larry Belcher warned the owner of Bama Handling, Butch Inman, not to allow his employees or contractors to climb onto the conveyor belts.
While he was working at the Meadowcraft plant, Price climbed onto a conveyor-belt system to diagnose a problem with the system. At that time, the system had been stopped. While walking or running backward on the belt, Price instructed a Meadowcraft employee to restart the conveyors. Price began pushing and pulling a large box back and forth onto the conveyor belt to simulate the movement of the production line. While doing so, Price's foot slipped between the belts on the conveyor, causing an injury to his leg. Price offered evidence at trial indicating that a safety roller was missing from the conveyor-belt system at the point where his leg was injured. It is unclear from the evidence whether the safety roller was missing when Price climbed on the conveyor belt or whether it popped out as he walked on the belt. *Page 705 
Price sued Meadowcraft, alleging that Meadowcraft had been negligent and that its negligence had caused his injury. Price alleged that Meadowcraft was liable for failing to maintain the conveyor in a safe condition and that Meadowcraft had failed to warn Price of the danger created by the missing safety roller. Meadowcraft denied any negligence on its part, denied that it had removed the safety roller, and denied any knowledge that the safety roller was missing. Meadowcraft also asserted that it had no duty to warn Price of the hazard associated with the conveyor belt because Price was employed by an independent contractor, that Price was injured while working pursuant to the contract undertaken by his employer, and that Price and his employer knew or should have known of the danger presented by the conveyor belt and of the possibility that a safety roller might dislodge. Meadowcraft further asserted that it had discharged any duty to warn by instructing Butch Inman, the owner of Bama Handling, to keep his employees and contractors off the conveyor-belt system. Meadowcraft also asserted that Price was guilty of contributory negligence.
The trial court denied Meadowcraft's motion for a summary judgment. After a five-day jury trial, Meadowcraft moved for a judgment as a matter of law, which the trial court denied. The jury returned a verdict in favor of Price in the amount of $60,000, and the trial court entered a judgment on that verdict. The trial court denied Meadowcraft's posttrial motion for a judgment as a matter of law.
Meadowcraft appealed and, pursuant to § 12-2-7(6), Ala. Code 1975, we transferred this case to the Court of Civil Appeals. The Court of Civil Appeals, with two Judges dissenting, affirmed the judgment for Price. The majority of the Court of Civil Appeals concluded that whether Meadowcraft had a duty to warn Price that a safety roller was missing from the conveyor-belt system when Price climbed on the system was a question of fact. The Court of Civil Appeals held that, although whether a duty to warn existed was generally a question of law to be determined by the trial court, the factual evidence presented in this case was disputed and, thus, the question was properly resolved by the jury. The Court of Civil Appeals also concluded that Meadowcraft's contributory-negligence defense presented a jury question.
In his dissenting opinion, Judge Crawley stated that the issue whether Meadowcraft owed Price a duty should not have been presented to the jury. Judge Crawley noted that Meadowcraft had warned the independent contractor, Bama Handling, not to allow its employees to climb onto the conveyor belt and that, by doing so, Meadowcraft had satisfied its duty toward Price. Therefore, Judge Crawley concluded, the issue whether Meadowcraft had been negligent should not have gone to the jury, and a judgment should have been entered for Meadowcraft. Judge Thompson concurred in Judge Crawley's dissenting opinion. Meadowcraft Indus.,Inc. v. Price, 817 So.2d at 701-02 (Crawley, J., dissenting).
We granted Meadowcraft's petition for certiorari review to consider whether, under the evidence presented, the trial court improperly denied Meadowcraft's motion for a judgment as a matter of law. Stated differently, we granted Meadowcraft's petition to consider whether Meadowcraft owed a duty to warn Price, the employee of an independent contractor, of the danger presented by the conveyor-belt system, and if so, whether it had discharged that duty. *Page 706 
 Standard of Review
This Court summarized the standard of review in this type of case inFleetwood Enterprises, Inc. v. Hutcheson, [Ms. 1981624, Nov. 17, 2000]791 So.2d 920, 923 (Ala. 2000):
 "We review a trial court's denial of a motion for a judgment as a matter of law by the same standard we applied to an order denying the motion formerly known as a motion for a directed verdict. Winn Dixie of Montgomery, Inc. v. Colburn, 709 So.2d 1222, 1223 n. 1 (Ala. 1998). `The standard of review applicable to a directed verdict or to a denial of a motion for a directed verdict is whether the nonmoving party has presented substantial evidence in support of his position.' K.S. v. Carr, 618 So.2d 707, 713 (Ala. 1993). `Substantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.' West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala. 1989). We have held:
 "`Upon review of a motion for a directed verdict or a [judgment notwithstanding the verdict], evidence must be viewed in the light most favorable to the nonmoving party, and if reasonable inferences in favor of the plaintiff's claim can be drawn from the evidence, the motion must be denied. Zaharavich v. Clingerman, 529 So.2d 978, 980 (Ala. 1988).'
"Woodruff v. Johnson, 560 So.2d 1040, 1041 (Ala. 1990)."
 Analysis
In addressing the duty of care a premises owner owes an independent contractor, this Court has observed:
 "`[A]n owner of premises is not responsible to an independent contractor for injury from defects or dangers which the contractor knows of, or ought to know of. If the defect or danger is hidden and known to the owner, and neither known to the contractor, nor such as he ought to know, it is the duty of the owner to warn the contractor and if he does not do this, of course, he is liable for resultant injury. Crawford Johnson Co. v. Duffner, 279 Ala. 678, 189 So.2d 474 (1966).'
 "Veal v. Phillips, 285 Ala. 655, 657-58, 235 So.2d 799
(1970). This rule applies equally to those employees of the independent contractor on the premises engaged in work in furtherance of performing the contract."
Glenn v. United States Steel Corp., Inc., 423 So.2d 152, 154 (Ala. 1982) (emphasis omitted). Thus, under Glenn, to submit his duty-to-warn claim to the jury, Price was required to present substantial evidence of three elements: (1) that the defect or danger was "hidden"; (2) that it was "known to the owner"; and (3) that it was "neither known to the contractor, nor such as he ought to know." If Price presented substantial evidence tending to establish each of these elements, then a jury question was presented as to whether Meadowcraft had a duty to warn Price of the danger or defect. However, if, substantial evidence as to any one of these elements is lacking, then, as a matter of law, Meadowcraft had no duty to warn Price of the danger or defect and Meadowcraft was entitled to judgment as a matter of law.
As an initial matter, we must identify the defect or danger as to which Meadowcraft allegedly should have warned Price. The majority of the Court of Civil Appeals apparently believed that the danger was that created by the missing safety roller; the dissenting opinions in the Court of Civil Appeals addressed only the general *Page 707 
danger presented by the conveyor-belt system. The record before us does not clearly identify which of these two dangerous conditions formed the basis of the issue as submitted to the jury. Thus, if the record contains substantial evidence regarding either of these potential dangers, the trial court properly denied Meadowcraft's motions for a judgment as a matter of law and the Court of Civil Appeals properly affirmed its judgment for Price.
After a careful review of the record, we conclude that Price failed to present substantial evidence of the elements essential to his duty-to-warn claim regarding the danger created by the missing safety roller in the conveyor-belt system. We also conclude that, based on the evidence reflected in the record, Meadowcraft, as a matter of law, fulfilled any duty it owed Price to warn him of the general danger associated with climbing onto the conveyor-belt system. Thus, we conclude that the trial court improperly denied Meadowcraft's motion for a judgment as a matter of law and that the Court of Civil Appeals erred in affirming that judgment.
 Discussion
In order to present a jury question as to whether Meadowcraft had a duty to warn him of a danger or defect, Price had to present substantial evidence that the danger or defect was hidden, that it was known to Meadowcraft, and that it was neither known to Price nor of a type that he ought to have known of it. See Glenn v. United States Steel Corp., supra. We conclude that Price failed to meet the Glenn standard, because the record contains ample evidence to charge Price with both actual and constructive knowledge of the hazards presented by both the conveyor-belt system and the missing safety roller.
The record reflects that Meadowcraft hired Bama Handling to install new conveyor-belt lines and that Bama Handling, in turn, hired Price's employer, Techmation, to install software to integrate the new conveyor-belt lines with the conveyor-belt system operating at Meadowcraft and to resolve certain problems with the system. Butch Inman, the owner and president of Bama Handling, testified that he had 25 years' experience working with conveyor systems and that he had sold Meadowcraft the conveyor-belt system it was using in its plant. Inman testified that the person he dealt with at Meadowcraft, Larry Belcher, "didn't have a detailed knowledge of conveyors." Inman also testified that he was aware of "numerous" dangers presented by climbing up on a moving conveyor belt. "You can fall off. You can lose your balance and fall backward. You can fall into a piece of equipment and break your neck. You can get arms, legs, feet, fingers tangled up into the conveyor. They are almost too numerous to mention."
Additionally, Inman testified that he was familiar with the location on the conveyor belt and the gap where Price was injured. He testified that he and everyone who worked for him at Meadowcraft were familiar with all the moving parts of the conveyor-belt system. He specifically stated that Price was familiar with "every detail about how [the conveyor belt system] worked and how it functioned and why it functioned that way. . . . He had to have a detailed working knowledge of each piece of the conveyor, why it functioned like it did, and how it functioned like it did because he was writing the software to control it." Inman also testified that there was no one working at Meadowcraft who knew more about the conveyors than he and Price did. *Page 708 
Price's trial testimony was replete with minute details regarding the operations of Meadowcraft's conveyor-belt system. Price himself admitted that he was aware of the dangers of riding on a conveyor-belt system as well as the risks of riding on the rollers and that there were even more risks associated with riding on the rollers than on the belts. He also admitted that, on several occasions before he was injured, he had been in the area of the conveyor belt where his injury occurred. Further, Price's own expert witness acknowledged that Price "should have been aware of the fact that safety rollers will pop-out and that his foot could get trapped." Finally, Price acknowledged that his injury occurred while he was performing his duties under Techmation's contract with Bama Handling.
We conclude that Price, as an employee of Techmation, which was, in turn, a subcontractor of Bama Handling, is charged with the same detailed knowledge of the conveyor-belt system and of the dangers associated with that system as Inman had. See Crawford Johnson Co. v. Duffner,279 Ala. 678, 682-83, 189 So.2d 474, 478 (1966) (holding, in a similar failure-to-warn case, that the trial court correctly instructed the jury that a premises owner owes no duty to warn an independent contractor's employees of a danger once the independent contractor is aware of that danger; "it was the duty of plaintiff's employer to warn plaintiff of the hazard or to take reasonable steps, commensurate with the circumstances, to guard against injury to plaintiff from such a hazard"). See also LakeParker Mall, Inc. v. Carson, 327 So.2d 121, 123 (D.C.A. Fla. 1976) (recognizing that a premises owner's duty to warn an independent contractor's employees generally is satisfied by providing notice of the danger to the contractor or to supervisory personnel); 41 Am. Jur. 2d,Independent Contractors § 27 ("Where the employer of an independent contractor is not in immediate control of the employment area and does not participate in the operation thereon, notice to the contractor of hazards within the employment area is notice to his employees, as the contractor has the duty to transmit such notice or warning to his employees."). Because Inman was aware of the dangers presented by the conveyor-belt system and by the design of the safety rollers, Price is charged with that same knowledge.
Moreover, we conclude that based upon Price's own experience with the conveyor-belt system and upon his intricate working knowledge of that system, Price either knew, or should have known, of the risk created by the design of the conveyor-belt system and the safety rollers when he decided to walk on the conveyor-belt system and the rollers. See 41 Am.Jur. 2d, Independent Contractors § 27 ("A property owner is not liable to the independent contractor or his employees for injuries resulting from conditions obviously dangerous and known to be so by the contractor or his employees."). Thus, based upon the evidence presented at trial, we conclude that Price had actual knowledge of, or is charged with constructive knowledge of, the dangers associated with the conveyor-belt system, including the design of the safety rollers.
Further, according to Price, Techmation was "supposed to be handling all the controls as far as taking the equipment and making it operate to what Meadowcraft needed the equipment to do, the whole controls end of the job." Price acknowledged that Techmation's assignment involved complete authority over the conveyor-belt system and the production line to the point that Techmation had the authority to completely shut down production, if necessary. He also added the following: *Page 709 
"I guess I would say that if there was a problem, we had to solve it." Price further admitted that Meadowcraft did not instruct him as to how to solve the problem with the conveyor belt and that he alone decided to have the conveyor belt restarted while he was walking on that belt. Price made this decision, when he knew of, or should have known of, the danger created by conveyor-belt system and the rollers.
We conclude that Price's injury was caused by a known danger that was incidental to the very work Bama Handling and Techmation were hired to perform for Meadowcraft. See 41 Am. Jur. 2d, Independent Contractors
§ 27 ("[t]he duty to provide a reasonably safe working place for employees of an independent contractor does not relate to known hazards which are part of or incidental to the very work that the contractor was hired to perform"). For these reasons, we conclude that, as a matter of law, Meadowcraft had no duty to warn Price of the specific danger created by the conveyor-belt system and the safety rollers.
Finally, we conclude that Meadowcraft discharged any duty to warn Price of the general dangers associated with the conveyor belt. It is undisputed that Larry Belcher warned Butch Inman, the owner of Bama Handling, to keep its employees and contractors off the conveyor belt. Butch Inman testified as follows at trial:
 "Q: Okay. Now, did Mr. Belcher tell you anything about having people on top of this conveyor belt that y'all were working on?
"A: Yes.
"Q: Please explain for me.
". . . .
 "A: He caught one of [my mechanical installers] riding on the moving conveyor during the time of production. He found me in that building. . . . And he said if I catch anybody on that conveyor again, you're fired.
"Q: And what did you do in response.
 "A: I stopped everything at that point in time and grabbed everybody that was in that building that was a subcontractor of mine and told them do not under any circumstances get on that conveyor while it is moving in production.
"Q: Was Mr. Price one of those people?
"A: Yes."
Inman also testified that he specifically warned Price on at least one additional occasion before Price was injured to stay off the conveyor belts.
As this Court recognized in Armstrong v. Georgia Marble Co.,575 So.2d 1051 (Ala. 1991):
 "The owner of premises owes a duty to business invitees to use reasonable care and diligence to keep the premises in a safe condition, or, if the premises are in a dangerous condition, to give sufficient warning so that, by the use of ordinary care, the danger can be avoided. In the instant case, skylights located on a roof where work was being done could be considered a dangerous condition. However, the owner of premises need not warn of dangers or defects that the business invitee knows of or that should be observed by the invitee in the exercise of reasonable care.
 "The record reflects, without dispute, that [the premises owner] told [the independent contractor] about the skylights. Thus, [the premises owner] fulfilled any duty it had when it warned [the independent contractor] of the existence of the skylights."
575 So.2d at 1053.
As was the case in Armstrong, the evidence in this case establishes that Meadowcraft, in fact, warned the independent *Page 710 
contractor of the dangers posed by the conveyor-belt system. The evidence also establishes that Price knew, or should have known, of the risks associated with climbing on the conveyor-belt system. We conclude that Meadowcraft was not required to detail every hazard that could result if the warning to stay off the conveyor-belt system went unheeded. The risk of an injury to a hand or leg was, or should have been, obvious enough to Price to require no further warnings by Meadowcraft.
Based on this evidence, we conclude that Meadowcraft was entitled to a judgment as a matter of law on Price's duty-to-warn claim. Accordingly, we hold that the trial court improperly denied Meadowcraft's motions for a judgment as a matter of law. We reverse the judgment of the Court of Civil Appeals and remand this case to that Court for the entry of an order consistent with this opinion.
Because our consideration of the duty-to-warn issue disposes of this case, we need not address the contributory-negligence issue raised by Meadowcraft.
REVERSED AND REMANDED WITH INSTRUCTIONS.
Houston, See, Lyons, Brown, Johnstone, Harwood, and Woodall, JJ., concur.
Moore, C.J., dissents.