MURDOCK, Justice.
South Alabama Brick Co., Inc., d/b/a Riley-Stuart Supply Co. (“SAB”), appeals from the Mobile Circuit Court’s judgment in the amount of approximately $12.6 million in favor of J. Gregory Carwie, as temporary conservator of Benito Perez, who suffered catastrophic injuries when he fell through a skylight in the roof of a warehouse owned and operated by SAB. We reverse.

I, Facts and Procedural History

SAB is a Dothan, Alabama, based supplier of building materials, including bricks and roofing materials, which has seven locations throughout Alabama and Florida. One of those, locations is a warehouse in Mobile, Alabama (“the warehouse”). The roof of the warehouse includes a large flat area. Contiguous to the large flat area is a large pitched area. The pitched area of the roof contains 37 skylights that are raised above the contours of the roof itself. The flat area of the roof contains 12 skylights that are not raised above the contours of the roof.. The surfaces of both the pitched and flat areas of the roof are corrugated.
In October 2010, SAB noticed that water was dripping into the warehouse from leaks somewhere in the roof. Ramsey Stuart, the general manager of SAB’s Mobile location, contacted Cooner Roofing and Construction, Inc. (“Cooner Roofing”), regarding the need for repairs to the roof.
Bobby Cooner is the president and owner of Cooner Roofing (a business begun by his father). Stuart testified that, when SAB had experienced any “roof issues, leaks or whatever over the years” it would call Cooner Roofing, He testified that he would rely upon Cooner to determine what repairs might be necessary. According' to Stuart, Cooner Roofing’s services in repairing leaks had been acceptable, and, during Stuart’s lengthy association with SAB, he had no recollection of anyone other than Cooner Roofing performing repair work on SAB’s roof.[1]
Cooner examined the warehouse roof and gave SAB two proposals for repairing it. For a price of approximately $10,000, which. SAB accepted, Cooner proposed to repair the roof of the warehouse by putting a coating on some portions of the flat area of the roof, installing a Hydro Stop brand waterproofing system in the middle *1172 seam and upper seam of the flat area of the roof, and repairing or replacing the covers for the 37 skylights on the pitched area of the roof.[2] The 12 skylights on the flat area of the roof were not included as part of the work Cooner proposed.
Stuart testified that he had worked at SAB, a business started by his father, for over 30 years and that the skylights had been part of the roof since before he began working at the facility. According to Stuart, neither he nor, to his knowledge, any SAB employee had ever been on the warehouse roof. The record contains no evidence indicating that any SAB employee had ever been on the roof.[3]
SAB was not aware exactly of where Cooner Roofing’s work on the roof would be performed. Stuart did testify that Cooner had advised him that some of his “crew” would be working around some of the skylights. On cross-examination, Stuart testified that he knew that the skylights would not support the weight of a man and that if a person fell through a skylight he likely would suffer grievous injury or death.
At the time of the events in question, Cooner Roofing used subcontractors and/or temporary employees to perform its work. Cooner testified that approximately 90 percent of the company’s work consists of residential roofing projects; he could not name any commercial projects the company had performed other than those it had performed for SAB.
Stuart testified that he could not recall any prior “incidents” involving the safety of Cooner Roofing’s employees or subcontractors and that there had never been any indication that Cooner or Cooner Roofing did not have knowledge of whatever hazards there might be working on metal roofs. Further, Stuart testified that he had no knowledge regarding any fall-protection requirements for working on roofs and that he had left it up to Cooner Roofing to take whatever safety measures it deemed necessary to do its work from time to time on SAB’s roof. There is no evidence indicating that SAB exercised, or reserved the right to exercise, any control over the manner in which Cooner Roofing performed its contractual obligations to SAB.
Cooner Roofing hired Rocael Perez and his “crew,” including Benito Perez, to perform the work on the roof of the warehouse. According to Rocael Perez, the members of his crew were not his employees and they all shared equally the money Cooner Roofing paid for the roofing work.[4]
Cooner testified that he warned Rocael Perez and his crew that the skylights on the flat area could be dangerous. Specifically, Cooner testified that he went up on the flat roof with Stuart and Rocael Perez and that he pointed out each of the 12 skylights on the flat area of the roof to Rocael Perez. Cooner stated that he then told Rocael Perez to follow fall-protection regulations of the Occupational Safety and Health Administration (“OSHA”) in dealing with the skylights, which he said dictate covering skylights with plywood and using harnesses with ropes while working on the roof. Cooner added, however, that *1173 he expected Rocael Perez to purchase his own safety supplies for the project, including the plywood, as well as workers’ compensation insurance. Cooner testified that the estimate he provided to Stuart for the cost of the roofing project included the cost of any safety supplies that might be necessary.
Rocael Perez testified that before the roofing project for SAB, he had never worked around skylight panels similar to the ones installed in the flat area of the warehouse roof. He stated that before the accident he did not know whether those skylights could hold the weight of a person and he did not know' that they could be dangerous. He testified that Cooner did not tell him that there were skylights on the flat area of the roof and thus did not relate that those skylights could be dangerous. He stated that Cooner Roofing did not provide the crew with any safety guidelines or supplies. Rocael Perez also testified that the skylights on the flat area of the roof were “fitted into the roof,” not raised like ordinary skylights, and that they were “practically identical to the metal” portion of the roof. He conceded that the skylight panels in the flat area of the roof were a different color than the rest of the roof, but he stated that the skylights were old and that the color looked kind of like metal.[5] He testified that, when you are on the roof in the sunlight, the whole roof looks black and the skylights look no different than the rest of the roof.
Another crew member, Byron Perez, testified that Cooner spent only eight minutes on the roof with the crew explaining the job to them. He stated that Cooner did not tell them about the skylights or warn them to be careful because the skylights could be dangerous. Byron gave testimony to the same effect as Rocael about the difficulty of distinguishing between the roof and the skylights. Carwie also presented expert testimony to the effect that the skylights and the danger they presented were not open and obvious.
On October 29, 2010, the second or third day the crew had been working on the warehouse roof, Benito Perez was working on the pitched area of the roof near the crease between the pitched area and the flat area of the roof. According to Byron Perez, Benito Perez stood up, took a step backward, and lost his balance. Benito Perez then proceeded to fall backward onto one of the skylights on the flat area of the roof. He fell through the skylight and hit the concrete floor of the warehouse at least 20 feet below the roof. The fall resulted in catastrophic injuries to Benito Perez.
Carwie, as temporary conservator of Benito Perez, sued Cooner Roofing. The complaint alleged negligence and wantonness; Carwie later added SAB as a defendant.
Following a bench trial, but before the trial court entered a judgment, both SAB and Cooner Roofing filed separate motions they styled as motions for a judgment as a matter of law. SAB also filed a “Supplemental Motion for a Judgment as a Matter of Law." Carwie agreed at the close of trial that he was not pursuing the wantonness claims against SAB and Cooner Roofing, and the trial court entered a judgment in favor of SAB and Cooner Roofing on the wantonness claims. The trial court thereafter entered what it entitled an “Order and Verdict.” At the outset of that order, the trial court noted that SAB’s and Cooner Roofing’s respective motions purporting to request judgments as a matter of law in a bench trial were actually motions for a judgment on partial findings by the trial *1174 court pursuant to Rule 52(c), Ala. R. Civ. P.[6] The trial court denied the motions.
As to SAB, the trial court noted in its order that SAB had argued that the only duty it owed Benito Perez was the duty a premises owner has to a business invitee. SAB argued that it was not liable to Benito Perez because, irrespective of whether the skylights and the danger presented thereby were open and obvious to Benito, Cooner Roofing, the entity that had employed Benito and that was responsible for stationing him on the roof, had superior knowledge about the dangers presented by the skylights on the flat area of the roof and was responsible for providing any necessary warnings to its own employees. The trial court rejected SAB’s argument.[7]
The trial court also concluded that SAB owed “an additional duty under the facts of this ease” besides the traditional common-law duty of a premises owner to a business invitee. Specifically, relying largely on expert testimony presented by Carwie, the trial court held that SAB had a duty to Benito Perez to ensure that Cooner Roofing was a safe, qualified contractor.
SAB also argued that it was entitled to a judgment on partial findings because Car-wie failed to present expert testimony as to the reasonableness of the medical bills resulting from Benito Perez’s care at University of South Alabama (“USA”) Hospital.[8] SAB contended that because Carwie failed to prove by competent evidence any medical expenses or recoverable damages, his negligence claim must fail. For several reasons, the trial court also rejected this argument. First, the trial court noted that Carwie had sought damages not only for Benito Perez’s medical expenses, but also for Benito’s pain, suffering, and mental anguish. Second, the trial court concluded that testimony from the collections manager of USA Hospital, Teresa Englestead, and from the collections supervisor at USA Physicians Health Services Foundation, Lucy Wilson, was competent to establish the reasonableness of the medical expenses submitted by Benito Perez. Third, the trial court noted that SAB had objected that Englestead and Wilson were not named as expert witnesses in accordance with the pretrial order, but the court concluded that “admission of testimony from witnesses whose identity as an expert may not have been disclosed in accordance with properly conducted pretrial discovery procedure is within the trial court’s sound discretion.”[9]
*1175 As noted, the trial court also rejected Cooner Roofing’s motion for a judgment on partial findings. Cooner Roofing argued that the danger of the skylights was open and obvious and, therefore, that it was not liable for Benito Perez’s injuries. The trial court rejected this argument, stating in its order that the question was not simply whether the skylights themselves presented an open and obvious danger “but whether [Benito] Perez appreciated the risk they posed” and that “whether the danger associated with the skylights was open and obvious is a question to be determined by the trier of fact.”
After denying SAB’s and Cooner Roofing’s motions for a judgment on partial findings, the trial court entered its judgment in the same order. The trial court noted that no party had requested that it find the facts specially or state its conclusions of law separately per Rule 52, Ala. R. Civ. P., and so the trial court chose not to detail separate findings of fact or conclusions of law beyond what it had already stated. The trial court entered a judgment in favor of Carwie and against SAB and Cooner Roofing in the amount of $12,601,676.
SAB filed a “Motion to Amend Judgment, for Judgment as a Matter of Law or, in the alternative, for New Trial or Remit-titur.” Thereafter, Cooner Roofing filed a “Notice of Joinder in all Post-Judgment Motions Filed by Defendant South Alabama Brick.” Carwie filed a motion to strike Cooner Roofing’s motion. After conducting a hearing, the trial court denied SAB’s motion and granted Carwie’s motion to strike Cooner Roofing’s motion.
SAB filed a timely appeal of the trial court’s judgment. Cooner Roofing has not appealed the judgment against it.

II, Standard of Review

Under Alabama law, the existence of a duty is a legal question to be determined by the court. Wal-Mart Stores, Inc. v. Smitherman, 872 So.2d 833, 837 (Ala.2003). On appeal, this Court reviews de novo rulings on the legal issue of the existence of a duty. Ex parte City of Brundidge, 897 So.2d 1129, 1131 (Ala.2004) (“A ruling on a question of law carries no presumption of correctness, and appellate review is de novo.”). In addition, although factual determinations based on evidence received ore tenus are entitled to a presumption of correctness, the question whether the trial court applied the correct legal standard is one of law to which the ore tenus rule has no application. E.g., Ex parte Perkins, 646 So.2d 46, 47 (Ala. 1994).[10]

III. Analysis

A SAB’s Duty to Benito Perez as a Business Invitee

A premises owner’s legal duty to a party injured by a condition of the premises depends upon the legal status of the injured party. Galaxy Cable, Inc. v. Davis, 58 So.3d 93, 98 (Ala.2010). In this case, Benito Perez was on SAB’s premises to confer a material or commercial benefit to SAB. Accordingly, the relationship between SAB, the premises owner, and Benito Perez, a roofer, is that of invitor/invitee. See Ex parte Mountain Top Indoor Flea Mkt., Inc., 699 So.2d 158, 161 (Ala.1997) (“ ‘In order to be considered an invitee, the *1176 plaintiff must have been on the premises for some purpose that materially or commercially benefited the owner or occupier of the premises.’ ” (quoting Sisk v. Heil Co., 639 So.2d 1363, 1365 (Ala.1994))).
Alabama law is well-settled regarding the scope of the duty an invitor owes a business invitee. “The owner of premises owes a duty to business invitees to use reasonable care and diligence to keep the premises in a safe condition, or, if the premises are in a dangerous condition, to give sufficient warning so that, by the use of ordinary care, the danger can be avoided.” Armstrong v. Georgia Marble Co., 575 So.2d 1051, 1053 (Ala.1991) (emphasis added). We have said that a premises owner’s duty to warn extends only to “hidden defects and dangers that are known to [the premises owner], but that are unknown or hidden to the invitee.” Raspilair v. Bruno’s Food Stores, Inc., 514 So.2d 1022, 1024 (Ala.1987). More specifically, we have explained that a plaintiff must establish “ ‘(1) that the defect or danger was “hidden”; (2) that it was “known to the owner”; and (3) that it was “neither known to the contractor, nor such as he ought to know.” ’ ” Roberts v. NASCO Equip. Co., 986 So.2d 379, 384 (Ala.2007) (quoting Ex parte Meadowcraft Indus., Inc., 817 So.2d 702, 706 (Ala.2001), quoting in turn Glenn v. United States Steel Corp., 423 So.2d 152, 154 (Ala.1982)).
“In discussing a premises owner’s liability towards an independent contractor, this Court has recognized that an ‘ “ ‘owner of premises is not responsible to an independent contractor for injury from defects or dangers which the contractor knows of, or ought to know off ” ’ ”
986 So.2d at 383 (quoting Veal v. Phillips, 285 Ala. 655, 657-58, 235 So.2d 799, 802 (1970)). See also Quillen v. Quillen, 388 So.2d 985, 989 (Ala.1980) (to the same effect).
This Court has elaborated on the nature of a premises owner’s duty to a business invitee as follows:
“ ‘ “ ‘The duty to keep an area safe for invitees is limited to hidden defects which are not known to the invitee and would not be discovered by him in the exercise of ordinary care. All ordinary risks present are assumed by the invitee, and the [invitor] is under no duty to alter the pi'emises so as to [alleviate] known and obvious dangers. The [invitor] is not liable to an invitee for an injury resulting from a danger that was obvious or that should have been observed in the exercise of reasonable care.’ ” ’ ”
Jones Food Co. v. Shipman, 981 So.2d 355, 362 (Ala.2006) (quoting Sessions v. Non-nenmann, 842 So.2d 649, 651-52 (Ala. 2002), quoting in turn Breeden v. Hardy Corp., 562 So.2d 159, 160 (1990) (bracketed language in original; some emphasis omitted)). Of particular importance to this case, the Court in Jones Food then stated:
“ ‘ “ ‘The entire basis of an invitor’s liability rests upon his superior knowledge of the danger that causes the invitee’s injuries. If that superior knowledge is lacking, as when the danger is obvious, the invitor cannot be liable.’ ” ’ ”
981 So.2d at 362 (quoting Sessions v. Non-nenmann, 842 So.2d at 651-52, quoting in turn Breeden v. Hardy Corp., 562 So.2d at 160 (emphasis added)). And as to an independent contractor in particular, we have explained: “ ‘ “There is no duty to warn” ... an independent contractor “who has equal or superior knowledge of a potential danger.” Roberts, 986 So.2d at 383-84 (quoting Fielder v. USX Corp., 726 So.2d 647, 650 (Ala.1998), quoting in turn Alabama Power Co. v. Williams, 570 So.2d 589, 592 (Ala.1990) (emphasis added)).
In Gray v. Mobile Greyhound Park, Ltd., 370 So.2d 1384 (Ala.1979) this Court took note of these same fundamental pre *1177 cepts, as set out in Corpus Juris Secun-dum, to explain what the Court referred to as the “no-duty” rule applicable to a premises owner that lacks “superior knowledge” of a danger:
“Th[e] absence of duty is commonly referred to as the ‘no duty’ rule and has been thoroughly discussed in 65 C.J.S. Negligence § 63(53), at pages 764-68, as follows:
[[Image here]]
“ ‘The basis of the inviter’s liability for injuries sustained by the invitee on the premises rests on the oumer’s superior knowledge of the danger, and, as a general rule, he is not liable for an injury to an invitee resulting from a danger which was known to the invitee or which was obvious or should have been observed by the invitee in the exercise of reasonable care, or from a condition which was as well known or as obvious to the invitee as to the inviter, or from a danger which the invitee should reasonably have appreciated before exposing himself to it, or which the inviter had no reason to believe would not be discovered by the invitee.’ ”
370 So.2d at 1388 (emphasis added); accord General Motors Corp. v. Hill, 752 So.2d 1186, 1187 (Ala.1999) (“ ‘[A]n invitor is not liable for injuries to an invitee resulting from a danger that was known to the invitee or that the invitee should have observed through the exercise of reasonable care.’ ” (quoting Ex parte Industrial Distribution Servs. Warehouse, Inc., 709 So.2d 16, 19 (Ala.1997))).
As indicated by the “ought to know” and “should have known” aspects of the standard quoted above, the duty of a premises owner is measured by an objective standard, not the subjective state of the invitee’s knowledge. The question is what was objectively reasonable for the invitor to expect the invitee to know. “As discussed in Sessions [v. Nonnenmann, 842 So.2d 649 (Ala.2002) ], the question is whether the danger should have been observed, not whether in fact it was consciously appreciated....” Jones Food, 981 So.2d at 362. And as we explained in Sessions, 842 So.2d at 653-54, an invitor’s duty before an accident is not determined by “the invitee’s subjective state of mind” at the moment of the accident.
With these legal principles in mind, we turn to the particulars of this case. Ultimately, the trial court’s judgment holds SAB responsible for not directly warning Benito Perez of the danger posed by the skylights. We consider this judgment in the context of the fact that Benito Perez’s injuries did not result from his deliberately stepping onto a skylight. Rather, Benito Perez was injured as a result of an accidental fall onto and through one of the skylights.
Benito Perez was injured on the second or third day he was working on the warehouse roof. Nonetheless, the parties disagree (and the trial court undertook to resolve their factual disagreement) as to what information Cooner had shared with Benito Perez regarding the skylights and, if Cooner had not done enough in this regard, whether Benito Perez reasonably could have been expected to discern the existence of the skylights and the danger they posed. But the question presented in this appeal is not the existence of a legal duty on the part of Cooner Roofing to warn or otherwise to provide a safe work environment for its employee, Benito Perez. (Clearly there was such a duty and we do not have before us an appeal by Cooner Roofing of the trial court’s judgment against Cooner Roofing for the breach of that duty.) Instead, the question is whether there existed a direct duty on the part of SAB to Benito Perez.
Benito Perez was an employee of Coon-er Roofing, not SAB. SAB contracted with Cooner Roofing, not Benito Perez, to re *1178 pair the warehouse roof. The resolution of this appeal therefore does not turn on whether the danger posed by the skylights was open and obvious to Benito Perez. It turns on whether, applying the standards set out above, we can say it was reasonable for SAB to expect that its independent contractor, Cooner Roofing, had knowledge equal or superior to that of SAB as to the danger that would be posed if an employee of Cooner Roofing were to fall from an elevated position onto one of the skylights on the flat area of the roof.
As set out above, the existence of a duty by a premises owner to a business invitee, and particularly to an independent contractor, depends on superiority of knowledge. In this case, there is no evidence that, in fact, SAB had knowledge superior to that of its roofing contractor as to the danger posed to a man accidentally falling onto a skylight on the roof of the warehouse. Moreover, as noted, the standard by which we judge the premises owner is whether the premises owner acted in an objectively reasonable manner. The premises owner is not an insurer of his premises and, by the same token, is not an insurer of the acts or omissions of the contractors it brings onto its premises. The existence of a duty on the part of the premises owner to an employee of such a contractor depends, then, on what information the premises owner reasonably could have expected that contractor to have known and acted upon. Accordingly, we must ask whether it was reasonable for SAB to expect that Cooner, as a professional roofer who had prior experience on multiple occasions with SAB’s roof and who also had inspected that roof on the present occasion to determine the source of multiple leaks and where repairs would be needed to correct those leaks, and who told Stuart that his crew would need to work near the skylights, would have an awareness of the danger that would exist if a member of that crew were to fall onto one of those skylights from an elevated position on the adjacent slanted roof. Was it objectively reasonable for SAB to expect a roofing contractor in Cooner Roofing’s position to issue to its own employees any necessary warnings regarding the hazard of working near, or to take any necessary physical measures to prevent, or to mitigate the consequences of, a fall onto, one of those skylights?
We must conclude under the circumstances presented that SAB reasonably could have expected that Cooner Roofing had at least as much knowledge as did SAB of the danger that would exist if one of Cooner Roofing’s employees were to fall onto a skylight, especially from the elevated position where, as it turned out, the employee was stationed by Cooner Roofing. Where a premises owner can reasonably expect that its contractor knows as much or more than the premises owner does regarding a dangerous condition—whether this is so because the danger is open and obvious to anyone, because the owner has told the contractor all it knows, or because of the contractor’s expertise and previous experience on the premises—the superiority-of-knowledge test is not met and the premises owner has no further duty to warn the contractor. By extension, in that circumstance, the premises owner has no additional, direct duty to warn the contractor’s employees or any subcontractors. To hold otherwise would be to say that a premises owner, despite hiring a contractor whom the owner, for one of the reasons stated above, reasonably expects knows as much of more about the owner’s land, building, or fixtures as does the premises owner, must somehow “pull aside” or otherwise communicate directly with each and every employee of the contractor, subcontractor, employee of any subcontractor, etc. Obviously, at the point at which the contractor knows as much or more as does the premises owner regarding the land, building, or *1179 fixtures, the responsibility for sharing that information with its own employees or with subcontractors falls to the contractor.
In Armstrong, this Court held that when a premises owner is found to owe a duty to warn, that duty is satisfied, as a matter of law, when the contractor or supervisory personnel has knowledge of the dangerous condition:
“Once a third party discharges its duty by warning the employer, the duty of warning each of the employer’s individual employees falls to the employer. ‘[T]he owner or occupier of particular property has a duty to warn the employees of an independent contractor who has undertaken to do work on the property, of dangers that are hidden on or inhere in that property, and ... this duty is discharged if those in charge of the work for the independent contractor are given warning or have knowledge of the danger.’ Gulf Oil Corp. v. Bivins, 276 F.2d 753, 758 (5th Cir.1960) cert. denied, 364 U.S. 835, 81 S.Ct. 70, 5 L.Ed.2d 61 (1960); see, also, Cook v. Branick Manufacturing, Inc., 736 F.2d 1442 (11th Cir.1984).”
575 So.2d at 1053. Moreover, in Ex parte Meadowcraft Industries, supra, we explained that knowledge of a general contractor retained to install a conveyor at defendant’s plant concerning the dangers of the conveyor-belt system was imputed to the employee of a subcontractor.[11] 817 So.2d at 708. The constructive knowledge imputed to individuals working on the project, by virtue of the knowledge of a general contractor, is sufficient to discharge the premises owner of any duty to warn each individual worker of the condition of the premises. See also Farr Metal, Inc. v. Hines, 738 So.2d 863, 864 (Ala.1999) (holding that “direct knowledge” possessed by supervisory employees of plaintiffs employer, as to opening in upper floor of building through which plaintiff fell, “removed any duty on part of [defendant],” another subcontractor which created the hole, “to inform [plaintiff] of the possible danger presented by the opening”); Crawford Johnson & Co. v. Duffner, 279 Ala. 678, 189 So.2d 474 (1966) (holding that premises owner’s duty to warn is discharged if plaintiffs employer has knowledge of dangerous condition); Ramirez v. Alabama Power Co., 898 F.Supp. 1537, 1547-48 (M.D.Ala.1995) (applying Alabama law and explaining that a premises owner fulfills a duty to warn by warning plaintiffs employer of any danger).
In fact, faced with similar factual situations where a worker has fallen through a skylight, often with tragic consequences, courts around the country have held that the premises owner, is not liable. See, e.g., Strickland v. Timco Aviation Servs., Inc., 66 So.3d 1002 (Fla.Dist.Ct.App.2011) (holding that airplane-hangar owner had no legal duty to warn independent contractor of danger posed by skylights on roof); Crenshaw v. Arkansas Warehouse, Inc., 379 S.W.3d 515 (Ark.Ct.App.2010) (holding that warehouse owner did not have duty to warn independent contractor of danger of skylights on roof); Saunders v. Industrial Metals & Surplus, Inc., 285 Ga.App. 415, 646 S.E.2d 294 (2007) (affirming summary judgment in favor of warehouse owner on claim of roofer who fell through skylight); and Merrill v. Knauf Fiber Glass GmbH, 771 N.E.2d 1258 (Ind.Ct.App.2002) (to the same effect).

*1180
B. The Additional Duty Imposed by the Trial Court

After purportedly applying to SAB the duty owed by a premises owner to a business invitee, the trial court undertook to impose a different, additional duty on SAB. It held that SAB had a duty to Cooner Roofing’s employee, Benito Perez, “to insure that Cooner Roofing was a qualified contractor.” In essence, the trial court held that SAB had a duty to protect Benito Perez from the negligence of his own employer by not hiring that employer in the first place. In support of this additional duty, the trial court cited and described three cases:
“Hathcock v, Mitchell, [277 Ala. 586,] 173 So.2d 576, 584 (Ala.1965) (building owner has duty to employ qualified and competent architect and contractor; negligence where owner knew or should have known in exercise of due diligence that architect and contractor were not qualified) (citing Sloss-Sheffield Steel & Iron Co. v. Bibb, [164 Ala. 62,] 51 So. 345 (Ala.1910) (negligence for master to employ unqualified servant where servant’s incompetency was proximate cause of the injury)); see also Mentzer v. Ognibene, [408 Pa.Super. 578,] 597 A.2d 604, 610 (1991) (The general rule ‘recognize[s] that the owner who has entrusted the responsibility for the work to a qualified contractor justifiably depends upon the contractor’s expertise’).”
These cases, however, are inapposite. The issue they address is when, if ever, a premises owner is responsible for (a) injuries to third parties (b) resulting, not from some preexisting condition of the premises known to the owner, but from conditions created by the faulty workmanship or other negligence of an independent contractor committed by the contractor in the course of performing its contract. In Hathcock v, Mitchell, 277 Ala. 586, 173 So.2d 576 (1965), the Court addressed the liability of a landlord for damage suffered by its tenant as a result of the collapse of a roof negligently installed several days earlier by the owner’s contractor. Similarly, in Sloss-Sheffield Steel & Iron Co. v. Bibb, 164 Ala. 62, 51 So. 345 (1910), the issue was a landowner/employer’s liability to its employee for personal injuries suffered as a result of the negligent operation of a mine car by a contractor of the employer. See also Mentzer v. Ognibene, 408 Pa.Super. 578, 597 A.2d 604 (1991) (holding that property owners were not personally negligent in failing to prevent negligence of independent contractor or to warn contractor’s own employee of dangers created by contractor’s negligence).
The issue of the responsibility of a premises owner for the negligence of its contractor that injures another is an altogether different issue than the issue of a premises owner’s duty to the contractor (and by extension its employees) to warn or protect against preexisting conditions of the premises into which the premises owner invites the contractor.[12]

TV. Conclusion

The condition at issue here was a preexisting condition of a facility owned by SAB. *1181 SAB hired an independent roofing contractor, Cooner Roofing, with previous experience repairing the roof of that facility, to make repairs determined by .that contractor to be necessary and appropriate. Under the circumstances of this case, SAB was not legally responsible for warning Cooner Roofing’s employees of the risks of working on that roof. Because of our disposition of the issue of liability, we need not reach SAB’s arguments relating to the damages awarded against it.
The judgment of the trial court against SAB is reversed, and this cause remanded for entry of a judgment in favor of SAB.
REVERSED AND REMANDED.
MOORE, C.J., and BOLIN, MAIN, and BRYAN, JJ., concur.

. Records showed that, in just the last seven years before the incident, Cooner Roofing had performed work on SAB’s roof on at least three other occasions.

. Cooner also gave SAB an option for more extensive work to the roof at a greater cost, which SAB did not accept.

. Stuart testified that SAB did not even possess a ladder that could have enabled any of its employees to go onto the roof.

. It is unclear whether Rocael Perez was a subcontractor of Cooner Roofing who, in turn, employed Benito Perez, or whether Benito was a direct employee of Cooner Roofing along with the other members of the crew. The rationale for our decision applies to either circumstance. For purposes of this opinion, we treat Benito Perez as an employee of Cooner Roofing.

. Pictures of the roof introduced by both parties showed that the skylight panels on the flat area of the roof were a black or faded brown color while the rest of the roof was gray in color.

. Rule 52(c), Ala. R. Civ. P., provides:
“If during a trial without a jury a party has been fully heard on an issue and the court finds against the party on that issue, the court may enter judgment against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue, or the court may decline to render any judgment until the close of all the evidence. Such a judgment may be supported by findings of fact and conclusions of law.”

. The trial court took the position that SAB’s motion for a judgment on partial findings “hinges on what ... Cooner ..., the owner of Cooner Roofing, knew about the dangers of the skylights on SAB's warehouse roof.” The trial court expressed utter disdain for Cooner and decided his uncontroverted testimony was not worthy of belief. For the reasons explained in the text, the trial court’s disbelief of Cooner’s testimony is not dispositive of whether SAB owed a duty directly to Cooner Roofing’s employee, Benito Perez, in this case.

. Carwie introduced certified medical bills totaling $800,960.70. Also, Kathy Smith, a registered nurse and life-care-planning expert, testified that the future care for Benito Perez, if he is transferred to a long-term-care facility, would range from $1,930,610 to $2,279,119.54 over the course of his life.

. Before trial, Carwie listed Englestead and Wilson as fact witnesses, not as expert witnesses.

. In addition to its argument that it owed no duty to Benito Perez, SAB makes several arguments relating to the damages award in this case. These include an argument that Carwie failed to prove medical expenses by competent evidence and that the _ damages award, particularly the damages attributable to mental anguish and pain in excess of $9 million, is excessive. Because of our decision on the issue of duty, we pretermit consideration of these latter issues.

. Carwie’s attempt to distinguish Meadow-craft is without merit. Although it is true that the Court in Meadowcraft noted that the injured worker knew or should have known of the hazard from his own experience, that fact was not necessary to the holding that the premises owner’s duly was discharged based upon the general contractor’s awareness of the hazard. See 817 So.2d at 709.

. Even if the issue in this case could be said to fall in the former category, the law provides that it is the independent contractor in such cases, not the premises owner, who bears responsibility for the employee’s injury where the premises owner has not retained control over the manner in which the contractor performs its work.
"Generally, the owner of premises ... owes no duty to the employees of an independent contractor with respect to conditions arising in the progress of work on the contract. Hughes v. Hughes, 367 So.2d 1384 (Ala.1979). The test for whether such an owner will be viewed as a prime contractor is whether the owner reserved the right of control over the contractor’s work....
*1181 “More specifically, the issue presented here is whether [the defendant] retained the right to direct the manner in which [the contractor] performed its work."
Pate v. United States Steel Corp., 393 So.2d 992, 994 (Ala.1981). See also Armstrong, 575 So.2d at 1053 ("Because Georgia Marble Company did not retain any control over the work to be done, the relationship between Georgia Marble Company and Armstrong was not that of a master and a servant. Their relationship was that of an owner of premises and a business invitee."); Weeks v. Alabama Elec. Coop., Inc., 419 So.2d 1381, 1383 (Ala.1982) ("[A] premises owner owes no duty of care to employees of an independent contractor with respect to working conditions arising during the progress of the work on the contract.”). The evidence at trial was undisputed that SAB did not retain or purport to exercise any control over the manner in which Cooner Roofing or Benito Perez, or any other person working on the roof, performed the work on SAB’s roof.