[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-15730
Non-Argument Calendar
_____

D.C. Docket No. 2:15-cv-01903-AKK

JOHN GRAY,

Plaintiff – Appellant,

versus

L.B. FOSTER COMPANY INC.,

Defendant – Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

(February 5, 2019)

Before MARTIN, JILL PRYOR and HULL, Circuit Judges.

PER CURIAM:

John Gray appeals the district court's order granting summary judgment to L.B. Foster Company, Inc. on Gray's state-law claims for negligence and wantonness arising from an injury he suffered while at L.B. Foster's plant.  On appeal, Gray argues that the district court erred in granting summary judgment because genuine disputes of material fact exist as to both claims.  After careful review, we affirm.

## I.  FACTS AND PROCEDURAL HISTORY

Gray worked as an electrician for the American Cast Iron Pipe Company ("ACIPCO"), a manufacturer of industrial steel pipe.  ACIPCO constructed a pipe-coating plant on its Birmingham, Alabama property and leased the plant to L.B. Foster.  L.B. Foster applied coating to steel pipes manufactured by ACIPCO.  L.B. Foster ordinarily coated the exterior of the ACIPCO-manufactured pipes and rarely coated the interior of the pipes.  When Gray was injured, L.B. Foster was working to fulfill an unusual order to coat the interior of the pipes as well as the exterior.

Before the steel pipes could be coated, they were cleaned by blasting them with "blast shot," which is a tiny, bead-like material comprised of abrasive steel. Before coating the interior of the pipes, L.B. Foster applied blast shot to the interior using equipment known as the interior diameter coating blast line ("ID coating blast line").  The ID coating blast line contained several components.  One of these components was a blast head cart, which traveled back and forth along

2

tracks on the blast line.  The blast head cart contained a blast head, which sprayed blast shot at high speeds into the pipe.  On the opposite end of the blast line sat a rear blast cabinet, or "dust catcher," which captured most of the spent blast shot and other debris created during the blasting process.  A reclaim conveyor running the length of the blast line occupied a recessed space in the floor of the blast line.  The reclaim conveyor belt was designed to catch the blast shot used in the cleaning process and recycle it.  Yellow guard plates covered the reclaim conveyor and funneled blast shot down onto the belt.  Despite these mechanisms for recycling blast shot, the ID coating blast line could not contain all the shot.  Inevitably, some blast shot would fall on the floor near the blast line, making the floor slippery.

When Gray was injured, ACIPCO and L.B. Foster were operating under an agreement for ACIPCO to make electricians available "on call" to L.B. Foster.  ACIPCO electricians, in the months preceding Gray's accident, had been assisting with the maintenance of the ID coating blast line.  On the day of the accident, an ACIPCO foreman discovered Gray lying on the guard plates that sit atop the ID coating blast line reclaim conveyor.  The foreman observed blast shot atop the guard plates near Gray.  A witness stated that before Gray fell, he had been "walking down the blast line to inspect something electrical."  Doc. 53-1 at 4.[1]

---

[1] "Doc. #" refers to the numbered entry on the district court's docket.

3

Gray does not remember anything that occurred on the day of his accident, including the circumstances of his fall.

Invoking federal diversity jurisdiction, Gray sued L.B. Foster in district court, alleging claims arising from his fall for negligence and wantonness under Alabama law.  Following discovery, L.B. Foster moved for summary judgment on both claims.  L.B. Foster argued among other things that it owed Gray neither a duty to warn him about the presence of blast shot in its facility nor a duty to provide him with safe working conditions.  L.B. Foster further contended that Gray failed as a matter of law to establish that it had intentionally or recklessly disregarded his safety.  The district court granted L.B. Foster's summary judgment motion as to both claims.  This is Gray's appeal.

## II.  LEGAL STANDARD

We review *de novo* an order granting summary judgment, applying the same legal standards as the district court.  *Hegel v. First Liberty Ins. Corp.*, 778 F.3d 1214, 1219 (11th Cir. 2015).  A movant is entitled to summary judgment when the movant shows "'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"  *Id.* (quoting Fed. R. Civ. P. 56(a)).  When the movant satisfies this burden, "the burden shifts to the nonmoving party to establish—with evidence beyond the pleadings—that a genuine dispute material to each of its claims for relief exists."  *Stein v. Ala. Sec'y of State*, 774 F.3d 689,

4

692 (11th Cir. 2014).  We "must view the evidence and the inferences from that evidence in the light most favorable to the nonmovant."  *Id.*

## III.  DISCUSSION

On appeal, Gray argues the district court erred in granting summary judgment to L.B. Foster because genuine disputes of material fact existed as to whether the danger posed by blast shot on the floor was open and obvious, whether ACIPCO's knowledge of the danger posed by blast shot was equal or superior to L.B. Foster's, and whether L.B. Foster consciously disregarded Gray's safety by disregarding its own safety rules.  L.B. Foster responds that it had no duty to warn Gray because ACIPCO had equal knowledge of the hazard posed by blast shot. According to L.B. Foster, the district court correctly concluded that both of Gray's claims failed as a matter of law because L.B. Foster had no duty to warn Gray.  We agree with L.B. Foster as to both claims.

## A.    The District Court Correctly Granted Summary Judgment to L.B. Foster on the Negligence Claim.

To establish a negligence claim under Alabama law, a plaintiff must show: "(1) a duty to a foreseeable plaintiff; (2) a breach of that duty; (3) proximate causation; and (4) damage or injury."  *Lemley v. Wilson*, 178 So. 3d 834, 841 (Ala. 2015) (internal quotation marks omitted).  One who allows a business invitee to enter a premises has a duty "to use reasonable care and diligence to keep the premises in a safe condition, or, if the premises are in a dangerous condition, to

5

give sufficient warning so that, by the use of ordinary care, the danger can be avoided."[2] *Kmart Corp v. Bassett*, 769 So. 2d 282, 284-85 (Ala. 2000) (internal quotation marks omitted). Gray does not contend on appeal that L.B. Foster had a duty to keep the premises in a safe condition. Rather, he argues that L.B. Foster had a duty to warn him about the danger posed by blast shot.

An invitor only has a duty to warn an invitee about "hidden defects and dangers that are known to [the invitor], but that are unknown or hidden to the invitee." *Raspilair v. Bruno's Food Stores, Inc.*, 514 So. 2d 1022, 1024 (Ala. 1987). To establish a duty to warn, a plaintiff must therefore show: "(1) that the defect or danger was hidden; (2) that it was known to the [invitor]; and (3) that it was neither known to the contractor, nor such as he ought to know." *Ex parte Meadowcraft Indus., Inc.*, 817 So. 2d 702, 706 (Ala. 2001) (internal quotation marks omitted). An invitor has "no duty to warn of open and obvious defects which the injured party should be aware of in the exercise of reasonable care." *Owens v. Nat'l Sec. of Ala., Inc.*, 454 So. 2d 1387, 1389 (Ala. 1984). An argument that a danger was open and obvious is an affirmative defense for which the invitor

---

[2] Under Alabama law, "[t]he duty owed by a landowner to an injured party depends upon the status of the injured party in relation to the . . . land." *Galaxy Cable, Inc. v. Davis*, 58 So. 3d 93, 98 (Ala. 2010) (footnote omitted). Here, neither party challenges the district court's conclusion that Gray was an invitee.

bears the burden of proof. *Dolgencorp, Inc. v. Taylor*, 28 So. 3d 737, 742 (Ala. 2009).

More specifically to this context, when an invitor faces liability from its contractor, "[t]he existence of a duty on the part of the [invitor] to an employee of such a contractor depends . . . on what information the [invitor] reasonably could have expected that contractor to have known and acted upon." *S. Ala. Brick Co. v. Carwie*, 214 So. 3d 1169, 1178 (Ala. 2016). Where an invitor "can reasonably expect that its contractor knows as much or more than the [invitor] does regarding a dangerous condition," the invitor has no duty to warn. *Id.* An invitor can reasonably expect that its contractor knows as much or more than the invitor when: (1) "the danger is open and obvious to anyone," (2) "the [invitor] has told the contractor all it knows," or (3) the contractor has sufficient "expertise and previous experience on the premises." *Id.* Under Alabama law, "the duty of a[n] [invitor] is measured by an objective standard, not the subjective state of the invitee's knowledge." *Id.* at 1177.

Here, the parties' evidence viewed in the light most favorable to Gray shows that L.B. Foster could have reasonably expected that ACIPCO knew as much or more than L.B. Foster about the danger posed by blast shot near the ID coating blast line because of ACIPCO's expertise and previous experience on the premises. ACIPCO electricians had been assisting with the maintenance of the ID coating

7

blast line for months by the time Gray was injured. One ACIPCO foreman testified that "[w]hen ACIPCO electrician[s] go to L.B. Foster's plant in areas where blast shot is used, we take our knowledge and experience from working around blast shot with us." Doc. 49-1 at 5. This foreman also said, "ACIPCO employees working around blast shot know to be cautious when working around it." *Id.* Another ACIPCO foreman testified that "[a]ll of the [ACIPCO] 'on call' electricians knew there was shot blast around the ID Line at L.B. Foster." *Id.* at 38. This foreman further explained that "[w]orking around shot blast was like walking on ice. . . . [workers] ha[d] to be sure of [their] footing in that area." *Id.* Gray has offered no evidence to the contrary. Thus, viewing the evidence in the light most favorable to Gray, L.B. Foster reasonably could have expected that ACIPCO's knowledge of the danger posed by blast shot was at least equal to L.B. Foster's because of ACIPCO's expertise with blast lines and its previous experience on the premises. L.B. Foster therefore had no duty to warn Gray about the danger posed by blast shot.[3]

Gray contends that L.B. Foster's knowledge of the danger posed by blast shot was superior to ACIPCO's, citing as support testimony from an ACIPCO

---

[3] We do not discuss Gray's arguments that L.B. Foster failed to share all it knew about the blast shot hazard with ACIPCO or that the danger posed by the blast shot was not open and obvious because of our conclusion that L.B. Foster reasonably could have expected that ACIPCO's knowledge of the hazard was at least equal to L.B. Foster's due to ACIPCO's expertise and previous experience on the premises.

8

supervisor, Michael Jones.  Jones testified that L.B. Foster knew much more about the operation of the blast line than ACIPCO because ACIPCO did not know when "L.B. Foster [wa]s preparing pipe," how much blast shot would be used, when the blast line would be cleaned, or how much blast shot would escape from the machine at any given time.  Doc. 53-1 at 67.  But under Alabama law "the duty of a[n] [invitor] is measured by an objective standard, not the subjective state of the invitee's knowledge." *S. Ala. Brick Co.*, 214 So. 3d at 1177.  Thus, "[t]he question is what was objectively reasonable for the invitor to expect the invitee to know." *Id.*  Here, it was objectively reasonable for L.B. Foster to expect, based on ACIPCO's expertise and previous experience on the premises, that ACIPCO knew blast shot could be present near the ID coating blast line and that the presence of blast shot created a slipping hazard.  Jones's testimony therefore does not change our conclusion that L.B. Foster had no duty to warn Gray.

Gray also points to his own statements under oath and those of another ACIPCO electrician showing that they were unfamiliar with the blast line and how it worked.  Again, the Alabama Supreme Court has explicitly rejected the argument that an invitor's duty to warn turns on the subjective knowledge of an injured party.  *Id.*

**B.    The District Court Correctly Granted Summary Judgment to L.B. Foster on the Wantonness Claim.**

Gray argues that the district court erred in granting summary judgment to L.B. Foster on his wantonness claim because genuine issues of material fact existed that should have precluded summary judgment. Specifically, Gray contends that L.B. Foster consciously disregarded his safety by permitting its safety guidelines to be violated. Alabama law defines wantonness "as the conscious doing of some act or the omission of some duty, while knowing of the existing conditions and being conscious that, from doing or omitting to do an act, injury will likely or probably result." *Bozeman v. Cent. Bank of the South*, 646 So. 2d 601, 603 (Ala. 1994) (internal quotation marks omitted). Gray argues only that L.B. Foster omitted a duty.[4] Under Alabama law, a wantonness claim arising from the alleged omission of a duty fails as a matter of law when no such duty exists. *Dolgencorp, Inc.*, 28 So. 3d at 746 ("Because Dolgencorp owed no duty to Taylor, her wantonness claim must also fail as a matter of law."). Our conclusion that L.B. Foster had no duty to warn Gray means his wantonness claim fails as a matter of law.

## IV.    CONCLUSION

---

[4] Specifically, Gray argues in his brief that as to the wantonness claim, "[t]here is a genuine issue of material fact as to whether L.B. Foster consciously ignored its duty in the face of a known danger and a probable injury." Appellant's Br. at 28.

10

For the foregoing reasons, we conclude that the district court did not err in granting summary judgment to L.B. Foster on Gray's state-law claims for negligence and wantonness.  We therefore affirm the judgment of the district court.

**AFFIRMED.**